Filed 3/25/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re CHARLOTTE C., a Person Coming Under the Juvenile Court Law. | D074022, D074420 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. SJ11791B) |
| v. | |
| M.M., | |
| Defendant; | |
| CHARLOTTE C., | |
| Appellant. | |

Consolidated APPEALS from findings and orders of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed in part; reversed in part.

Neale B. Gold, under appointment by the Court of Appeal, for Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Emily Harlan, Deputy County Counsel, for Plaintiff and Respondent.

Implemented statewide on January 1, 2017, the Resource Family Approval

Program (RFA) provides a unified approval process to replace the multiple processes to

approve foster care homes, relatives and nonrelative extended family members, and adoptive homes for the placement of dependent children. The RFA process involves the comprehensive collection and review of an applicant's personal information. The RFA contains a number of provisions designed to guarantee that the collected information remains confidential, with only limited exceptions. Those specific statutory exceptions do not explicitly include the release of RFA information to minor's counsel.

Raising an issue of first impression, minor Charlotte C. contends the juvenile court erred in denying her counsel's request for her relatives' RFA assessment information. She argues a number of statutory and regulatory exceptions allow minor's counsel to access such information, including Welfare and Institutions Code, section 317[1] which grants minor's counsel access to all public agency records relevant to the child's case. Charlotte asserts minor's counsel has an obligation to review her relative's RFA information due to allegations the relative had used methamphetamine and had engaged in an incident of domestic violence. Charlotte argues the error in denying minor's counsel access to RFA information was prejudicial because counsel was forced to make an uninformed decision concerning her best interests.

In a second appeal, Charlotte argues her due process rights were violated at a hearing under section 361.3 in which she was not permitted to present evidence and cross-examine witnesses about information obtained during her relatives' RFA assessment. Charlotte does not challenge the placement order or request a new section

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

361.3 hearing. Instead, she seeks an order from this court directing the release of her relatives' RFA information to minor's counsel.

The San Diego County Health and Human Services Agency (Agency) objects to any release of RFA information to minor's counsel, asserting such information is confidential and there are no statutory or regulatory exceptions that would allow the juvenile court to provide that information to minor's counsel. The Agency contends an order permitting minor's counsel to receive and litigate RFA information deemed confidential by the Legislature would violate the separation of powers doctrine.

We conclude that minor's counsel is entitled to receive a copy of her client's case file, including any RFA-related information, upon request pursuant to sections 317, subdivision (f) and 827. A case file includes all documents filed in the child's dependency proceeding, documents made available to a child welfare services social worker in preparation of court reports, and other documents related to the child that are maintained in the office files of the child welfare services social workers. If minor's counsel determines that access to additional confidential information is necessary to fulfill her duties and responsibilities to the child under federal and state law, on a showing of good cause, minor's counsel may petition the juvenile court for access to additional RFA information under section 827 and California Rules of Court, rule 5.552.[2] Notice must be provided to the relative whose information is being sought. The court may permit disclosure of juvenile case files only insofar as is necessary, and only if

_____

[2] Further unspecified rule references are to the California Rules of Court.

petitioner shows by a preponderance of the evidence that the records requested are necessary and have substantial relevance to the legitimate need of the petitioner, and the child's needs to inspect those records outweigh the relative resource family's interests in confidentiality of the information.

Here, minor's counsel's request for RFA information was overbroad and she would not have been entitled to the relatives' "RFA-related information" under the standard we define today. With respect to the claim that her due process rights were violated at the section 361.3 hearing, because Charlotte does not request a new trial or a reversal of the order placing her with her relatives, and error is harmless and we need not examine those claims. We reverse the juvenile court's finding it does not have the authority to review or release the relatives' RFA information that is pertinent to section 361.3 to minor's counsel. In all other respects, we affirm the orders of the juvenile court.

FACTUAL AND PROCEDURAL BACKGROUND

Charlotte's mother, M.M., has a significant history of methamphetamine abuse and involvement with child protective services.[3] Her parental rights to an older child were terminated in 2009. Charlotte, who was born in March 2012, was a juvenile court dependent from August 2012 to July 2014. During those proceedings, she was placed in the care of maternal relatives (Aunt and Uncle). During a second dependency case from November 2014 to January 2016, Charlotte remained in her mother's care. In June 2017, the Agency initiated a third dependency case on Charlotte's behalf. At the disposition

---

3    The whereabouts of Charlotte's statutorily presumed father and an alleged biological father were unknown.

4

hearing, the juvenile court bypassed services and set a section 366.26 hearing to select and implement a permanency plan.

M.M. asked the social worker to place Charlotte with Aunt and Uncle, who also requested placement. The Agency was unable to approve Aunt and Uncle for emergency placement and initiated the standard RFA process on June 21, 2017. The Agency placed Charlotte in a concurrent family foster home.

Charlotte presented as anxious. She continued to worry about her mother and was very reactive to her mother's behaviors. Her foster mother (Caregiver) was very attentive to her needs. Charlotte responded well to the stability and security of the home. She participated in weekly therapy with a therapist.

Friction developed between Charlotte's maternal relatives and Caregiver concerning visitation, which was supervised by Caregiver approximately once a month. Charlotte's grandparents and Aunt and Uncle requested additional visitation. Aunt said Charlotte was "not herself" while Caregiver was present. Caregiver was concerned because Charlotte often had crying episodes after visitation.

In January, in a report prepared for the section 366.26 hearing, the social worker said it was in Charlotte's best interests to remain in Caregiver's home. Caregiver very much wanted to adopt Charlotte.

At the Agency's request, the juvenile court continued the section 366.26 hearing several times because Aunt and Uncle's RFA was not yet complete and there was an outstanding request to place Charlotte with relatives under section 361.3.

5

By March 2018, the Agency was considering placing Charlotte with Aunt and Uncle upon completion of their RFA and increased her visits with Aunt and Uncle. Caregiver reported Charlotte's anxiety increased after visits and she had several severe crying episodes upon returning to Caregiver's home.

In April, the social worker reported that Aunt and Uncle's RFA was close to completion. They were in the process of obtaining "a certain clearance" from the Agency to be approved as a resource family. The Agency was implementing an expanded visitation schedule with the relatives to help the social worker make the required assessment of Charlotte's best interests under section 361.3. Charlotte told the social worker she wanted to live with her cousins. When the social worker asked specifically whether Charlotte wanted to live with Caregiver or with Aunt and Uncle, Charlotte said Aunt and Uncle already lived with her cousins, so they would live with her, too.

Charlotte spent the last two weekends in April with her Aunt and Uncle. After the first weekend visit, Caregiver said Charlotte exhibited "strange sexualized behavior" on her return home. The social worker immediately investigated the report. Charlotte denied anyone had touched her during her visit. She said she had fun with her cousins and wanted to stay with them again.

Upon learning of Caregiver's report of Charlotte's sexualized behavior, minor's counsel (Counsel) filed a motion to limit her visitation with Aunt and Uncle. The social worker said Charlotte was very comfortable with Aunt and Uncle and easily engaged with her cousins. Charlotte's therapist said she was presenting as being in the middle between Caregiver and her relatives and appeared to be overwhelmed by the expanded

6

visitation process. On April 26, the court suspended Charlotte's overnight visitation with Aunt and Uncle.

On April 30, Caregiver sent an e-mail to the social worker describing Charlotte's unusual behaviors after her return from an afternoon visit with Aunt and Uncle, including rubbing a pillow between her legs, grabbing Caregiver's leg to keep her from leaving the room, and hitting her four-year-old foster brother and screaming at him to get out of their shared bedroom.

Counsel asked the court to further limit Charlotte's visits with Aunt and Uncle. The juvenile court limited Charlotte's visits with Aunt and Uncle to two 4-hour visits a week.

During discovery, the Agency inadvertently disclosed three pages of its delivered service logs containing Aunt and Uncle's confidential RFA information to Counsel. During a hearing, because of a comment, Uncle believed Counsel was aware of his background information. Uncle was very upset by the breach of confidentiality. He and Aunt filed a formal objection to any release of their RFA records.

Counsel obtained a copy of an application for a domestic violence restraining order Aunt had filed on behalf of herself and her two children in May 2014. Aunt alleged that on May 6, 2014, after she and her husband had an argument, her husband hit his father in the presence of their children, who were screaming. Her husband had been using methamphetamine for at least nine months. When using, he became uncharacteristically aggressive and paranoid. Aunt wanted him to seek treatment.

7

Counsel filed a motion to obtain "RFA-related information" from the Agency "with or without Uncle's consent." She also asked the juvenile court to issue an order directing social workers to answer questions relating to Aunt and Uncle's placement assessment at the upcoming section 361.3 hearing, including the procedures used to investigate Uncle's background and whether he had received any criminal or child abuse exemptions. In addition, Counsel asked the court to conduct an in camera review of the inadvertently disclosed RFA information and permit its use at the placement hearing.

At a special hearing on May 17, the juvenile court acknowledged that section 317, which permits minor's counsel to access all records relevant to the child's case maintained by state or local public agencies, arguably supported the release of Aunt and Uncle's RFA records to Counsel. On the other hand, the Legislature clearly contemplated that RFA information would remain confidential to facilitate honest, open communication between the applicant and agency. The court was concerned if it released RFA information to minor's counsel, principles of due process would require its release to the other parties. The court denied Counsel's request for disclosure. With respect to Counsel's request to allow certain questions at trial, the court deferred its ruling until trial. The court declined to conduct an in camera review of the inadvertently released material and ordered Counsel to return or destroy those documents. Counsel filed a notice of appeal (case no. D074022).

In an addendum filed on May 17, the social worker reported that during a home visit on May 11, Charlotte said her foster brother was touching her private parts and she "did not like it." Caregiver said she was not aware of any inappropriate touching. The

8

social worker imposed a safety plan in the home and initiated a child protective services investigation.

On June 11, after an extensive child welfare services and criminal assessment review, the Agency officially cleared Aunt and Uncle for placement. On June 14, the social worker recommended Charlotte's placement with Aunt and Uncle. She represented they had good moral character and their home was safe and appropriate for Charlotte.

The relative placement hearing under section 361.3 hearing was held over five days, beginning June 21 and ending July 20, followed by the section 366.26 hearing. Uncle testified he had loved having Charlotte in his home when she was a baby. They had a close relationship. She was almost like his own daughter. He would adopt her. Uncle said he submitted to random drug tests by his employer, noting that if he tested positive, not only would he get fired, he would be arrested.

The juvenile court interrupted Counsel's cross-examination of Uncle ("When was the last time you used meth?") and brought in a public defender to assist him. Uncle invoked the Fifth Amendment in response to a series of questions by Counsel about allegations concerning methamphetamine use, the fight with his father, substance abuse, and domestic violence treatment.

Aunt testified her family was very important to her. She was willing to adopt Charlotte. Aunt said it was wonderful to have cared for baby Charlotte. Aunt's youngest daughter was two years older than Charlotte. They were best buddies from day one. Aunt was very involved in her children's lives. She would treat Charlotte the same as she treated her own daughters.

9

The social worker testified that at her monthly visit to Caregiver's home in May, she observed the foster brother intentionally place his hand around Charlotte's vaginal area. In a private conversation, Charlotte told the social worker her foster brother poked her "like, a hundred times" in her "pee hole and butt" and she did not like it. Charlotte said she had told Caregiver about the touching. The social worker recommended immediately removing Charlotte from Caregiver's home and detaining her with Uncle and Aunt. She did not move Charlotte to another resource family foster home because that would have been traumatic for her.

Caregiver denied ever seeing her foster son inappropriately touch Charlotte. She testified Charlotte never said anything to her about it, and she had adhered to the safety plan the social worker had implemented in May.

In an interim order, the juvenile court found that Charlotte may have been the victim of serious sexual acting out by another child in Caregiver's home. The court detained Charlotte with Aunt and Uncle pending further hearing.

When the hearing resumed a week later, the social worker said Charlotte was comfortable in her Aunt and Uncle's home. She had fun with a cousin who was close to her in age. There were no concerns about her adjustment. The social worker knew about the 2014 incident; nevertheless, Aunt and Uncle were "good people."

Aunt testified a social worker had forced her to file a restraining order in 2014 against her husband by threatening to remove her children if she did not comply. The juvenile court sustained a hearsay objection to the admission in evidence of Aunt's application for a restraining order. Aunt acknowledged her husband had used

10

methamphetamine in 2014. He had no prior history of substance abuse. After the 2014 incident, her husband was out of their home for a month. The social worker said he complied with all conditions and Aunt removed the restraining order. She did not know whether he had been required to participate in any services.

Counsel called two social workers with the RFA unit to testify. Each witness explained her role and the RFA process. The juvenile court then sustained a number of objections that would have required each witness to disclose confidential information they had obtained during Aunt and Uncle's RFA process.

An investigator with children's legal services testified her job included visiting their clients in their current placements, talking to their caregivers, and ensuring they were in a safe and appropriate environment and receiving all needed services. The investigator did not have access to any caregiver's child welfare or criminal history, which would be helpful in assessing the suitability of a child's placement. The investigator sat in on an interview between Counsel and Uncle. Uncle became very upset during the interview, refused to answer Counsel's questions about the 2014 incident, and refused to meet privately with the investigator. The investigator later visited Charlotte at their home. She seemed happy.

Finding that it was in her best interests, the juvenile court ordered the Agency to place Charlotte with Aunt and Uncle. The court said Uncle had some rough edges but there was no evidence he had had any problems since 2014. Uncle had a regular job and was drug tested. Aunt was delightful and appeared to be a very good and protective

caregiver. There was some minimization of the 2014 incident but no evidence of injury or a pattern of domestic violence.

After proceeding to the section 366.26 hearing, the juvenile court found that Charlotte was adoptable and terminated parental rights. Counsel filed a notice of appeal of the relative placement hearing under section 361.3 (case no. D0744028).

DISCUSSION

I

A

*Overview*

Every child has a compelling interest in living free from abuse and neglect in a safe and stable home with an emotionally committed caregiver. (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 223 (*Dakota H*.).) Children in foster care live in a variety of homes, including foster family homes, approved relative and nonrelative extended family homes, and group homes. (§ 16519, subd. (b).) Where possible, placement with a relative is preferred. (§ 361.3; see *In re Esperanza C*. (2008) 165 Cal.App.4th 1042, 1055 (*Esperanza C*.).) The Legislature states: "Research shows that children in out-of-home care placed with relatives and nonrelative extended family members are more stable, more likely to be placed with siblings, and more likely to stay connected to their community and extended family." (§ 16519, subd. (d).)

The purpose of the juvenile dependency system is to provide maximum safety and protection for dependent children. (§ 300.2.) With respect to the safety of a dependent child's placement in out-of-home care, the Legislature finds "[c]hild safety and well-

being are not achieved solely by ensuring that the home the child is placed in is free from physical hazards and that adults living in the home do not have disqualifying criminal convictions or past reports of child abuse. Child safety and well-being are also dependent upon consideration of the resource family's psychosocial history that includes physical health, mental health, alcohol and substance abuse, family violence or abuse, and experience caring for children." (§ 16519, subd. (c).) Thus, the placement approval process for dependent children involves the comprehensive collection and assessment of sensitive personal information.

To encourage the recruitment of resource families, to protect their personal privacy, and to preserve the confidentiality of placements, the Legislature mandates the information collected through RFA remain confidential, subject only to limited statutory exceptions. (§ 16519.55.) None of those statutory exceptions explicitly authorize release of a relative's RFA information to minor's counsel, who has special responsibilities to the child whose interests she represents.

To provide an independent voice for the child, federal and state law require that each dependent child will have a trained independent guardian ad litem who makes such investigations as necessary to understand the child's circumstances and make recommendations based on an evaluation of the child's best interests. (42 U.S.C. § 5106a(b)(2)(B)(xiii); §§ 317, subd. (c), (e)(1), 326.5; *In re Nicole H.* (2011) 201 Cal.App.4th 388, 398 (*Nicole H.*); *In re Josiah Z.* (2005) 36 Cal.4th 644, 679-680 (*Josiah Z.*).) In California, counsel for minors routinely serve as both the child's legal counsel and guardian ad litem. (*In re Kristen B.* (2008) 163 Cal.App.4th 1535, 1541-1542; §§

317, 326.5; rules 5.660, 5.662.) A "primary responsibility" of minor's counsel "is to advocate for the protection, safety, and physical and emotional well-being of the child." (§ 317, subd. (c)(2).) The statutes governing the RFA do not explicitly curtail minor's counsel's responsibility and obligation to make any investigation he or she deems in good faith to be reasonably necessary to represent the child's interests.

The arguments raised on appeal involve issues of statutory interpretation. Our review is de novo. (*In re D.S.* (2012) 207 Cal.App.4th 1088, 1097.)

B

*The Resource Family Approval Program*

The purpose of the RFA is to provide "a unified, family friendly, and child-centered resource family approval process to replace the existing multiple processes for licensing foster family homes, certifying foster homes by licensed foster family agencies, approving relatives and nonrelative extended family members as foster care providers, and approving guardians and adoptive families." (§ 16519.5, subd. (a).) An approved resource family has successfully met both the home environment assessment standards and the permanency assessment criteria necessary for providing care for a child.[4] (*Id.*, subd. (c)(1).)

---

[4]     The home environment assessment and the permanency assessment involve the collection and review of a comprehensive amount of personal information. A family home environment assessment includes a criminal record clearance for each applicant and all adults residing in or regularly present in the home (denizen), consideration of any substantiated child abuse allegation against the applicant and any denizens, and a home and grounds evaluation. (§ 16519.5, subd. (d)(2).) A permanency assessment includes a psychosocial assessment of an applicant and the results of a risk assessment. The risk

14

The information provided by an applicant during the RFA process is "personal information" as defined by the Information Practices Act of 1977, Civil Code section 1798 et seq. (§ 16519.55, subd. (a).) The Legislature defines "personal information" as "any information that is maintained by an agency that identifies or describes an individual, including, but not limited to, his or her name, social security number, physical description, home address, home telephone number, education, financial matters, and medical or employment history. It includes statements made by, or attributed to, the individual." (Civ. Code, § 1798.3, subd. (a).)

Recognizing the sensitivity of an applicant's personal information, and to encourage the recruitment of resource families, protect their privacy, and preserve the confidentiality of placements, the Legislature mandates that the information collected through the RFA remain confidential, subject only to limited exceptions. State or local agencies are prohibited from disclosing RFA information under the California Public Records Act, Government Code section 6250 et seq., which generally permits the public to have access to information concerning government matters. RFA information may only be released or shared as necessary for administering the RFA, facilitating the placement of children with resource families, providing names and addresses upon request only to foster care educational programs (§ 16519.55, subd. (a)), and to a county,

assessment includes, but is not limited to, the applicant's physical and mental health, alcohol and other substance abuse, family and domestic violence, and the applicant's understanding of children's needs and development, particularly children who have been victims of child abuse and neglect, and the capacity to meet those needs. A successful applicant must also demonstrate the ability to ensure the stability and financial security of the family. (*Id.*, subds. (c)(1) & (d)(3).)

tribe, or foster family agency as necessary to conduct a reference check to determine whether it is safe and appropriate to approve an applicant as a resource family. (*Id.*, subd. (d).)

Pending adoption of new state regulations, the Legislature directed the California Department of Social Services (CDSS) to administer the RFA by issuing directives, which have the force and effect of regulations.[5] (§ 16519.5, subd. (f).) To maintain the confidentiality of all RFA applications and records, section 4-04 of the Directives instruct the county to comply with section 10850 and Family Code section 9200 et seq. (Directives, § 4-04(c).)

The Directives also require the county to maintain any information obtained pursuant to the background check, criminal record exemption, and family evaluation, as well as its written report[6] in a confidential case file. (Directives, § 4-04(c).) The written

---

5    The Resource Family Approval Written Directives (Directives) effective at the time of the hearing at issue in this case is version 5. (http://www.cdss.ca.gov/inforesources/Resource-Family-Approval-Program [as of Mar. 25, 2019], archived at <https://perma.cc/6UUT-ALJF>.)

6    The Directives instruct the county to complete a written report or an equivalent report of the comprehensive assessment of an applicant (written report). (Directives, § 6-07(a).) The written report includes, but is not limited to, the following information:
        Identifying information of an applicant, children in the home, and other residents of the home (denizens).
        A description of the physical features of the home and an evaluation whether the home is safe and in compliance with requirements.
        An evaluation of the results of a background check of an applicant and denizens, including any criminal record exemptions granted.
        A summary of all interviews of applicant(s), children, nonminor dependents, wards, denizens, and other individuals.

report is "a summary, analysis, and determination of an applicant's suitability to foster, adopt, and provide legal guardianship . . . based on all the information gathered through the application and [c]omprehensive [a]ssessment processes." (Directives, § 3-01(89).)

Before we address Charlotte's contentions minor's counsel may receive or inspect RFA information under sections 317 and 827, we examine her arguments that minor's counsel is entitled to such information as a member of a child abuse multidisciplinary personal team under section 10850.1 and that minor's counsel may obtain such information pursuant to subpoena, court order, or other judicial process pursuant to Civil Code section 1798.24, subdivision (k).

C

*With Limited Exceptions, RFA Records Are Confidential*

1.      *Minor's Counsel is not a part of a multidisciplinary team.*

Charlotte argues minor's counsel may access RFA information under section 10850.1, subdivision (a), which permits members of a multidisciplinary personnel team engaged in the prevention, identification, management of, or treatment of child abuse or

---

An evaluation of the information obtained during a family evaluation of an applicant, including a risk assessment.

Verification of receipt of supporting documentation such as proof of identity, a health questionnaire or screening, verification of employment, income and expenses, and proof that applicant has the right to reside at the home that is being evaluated for the child's placement.

A determination of the applicant's commitment and capability to meet the child's needs.

A determination of how many children the applicant can appropriately and safely care for (capacity determination).

A summary of the applicant's understanding of the legal and financial responsibilities for providing care to a child or nonminor dependent.

Any concerns regarding the applicant. (Directives, §§ 6-07(b), 5-03A(8).)

neglect (multidisciplinary team) to share confidential public social services information. Charlotte asserts minor's counsel is arguably a member of a multidisciplinary team.

Section 10850, subdivision (a) protects the confidentiality of information in applications and records for any form of public social services for which the state receives federal grants-in-aid, such as federal funding for foster care and adoption services. Those records "shall not be open to examination for any purpose not directly connected with the administration of that program, or any investigation, prosecution, or criminal or civil proceeding conducted in connection with the administration of that program." (*Ibid*.)

Section 10850.1 provides an exception to confidentiality requirements for members of a multidisciplinary team engaged in the prevention, identification, management of, or treatment of child abuse or neglect. The Legislature defines the activities of a multidisciplinary team as "activities performed in the administration of public social services." (§ 10850.1.) If a multidisciplinary team member reasonably believes any confidential information is relevant to the prevention, identification, management of, or treatment of child abuse or neglect, the team member may disclose and exchange any information with other team members. (*Ibid.*) Multidisciplinary team members may include, but are not limited to, persons listed in sections 18951, subdivision (d) and 18961.7.[7]

---

[7] A multidisciplinary team consists of three or more persons who are trained in child abuse or neglect cases who are qualified to provide a broad range of services related to

We are not persuaded by the argument Counsel is entitled to confidential RFA information as a member of a multidisciplinary team. Multidisciplinary team members involved in child abuse cases are professionals who are trained in the prevention, identification, management or treatment of child abuse or neglect, and who are qualified to provide a broad range of services related to child abuse. (§ 18961.7, subd. (b).) The duties of minor's counsel are described in section 317 and rule 5.660, and do not include a role as a member of a multidisciplinary team. Although minor's counsel provides legal services to her client and has the requisite training to serve as CAPTA[8] guardian ad litem, she is not involved in the administration of public social services by providing psychological, medical, social work, law enforcement, educational or welfare services to the child.

Moreover, the statute permitting members of a multidisciplinary team to receive and share RFA information states "[a]ll discussions relative to the disclosure or exchange

child abuse or neglect. The team may include, but need not be limited to, any of the following:
(1) Psychiatrists, psychologists, marriage and family therapists, clinical social workers, and other professional or trained counselors.
(2) Police officers or other law enforcement agents.
(3) Medical personnel with sufficient training to provide health services.
(4) Social workers with experience or training in child abuse.
(5) A public or private school teacher, administrative officer, supervisor of child welfare and attendance, or certificated pupil personnel employee.
(6) A CalWORKs case manager, if applicable. (§§ 18951, subd. (d), 18961.7, subd. (b).) [§ 18951, subd. (d) defines a multidisciplinary team as *three* or more persons trained in child abuse or neglect cases, whereas § 18961.7, subd. (b) states a multidisciplinary team consists of *two* or more persons trained in child abuse or neglect cases.]

8        CAPTA is an acronym for the federal Child Abuse Prevention and Treatment Act, 42 U.S.C. § 5101 et seq.

of any such information or writing during team meetings are confidential and, notwithstanding any other provision of law, testimony concerning any such discussion is not admissible in any criminal, civil, or juvenile court proceeding." (§§ 10850.1, 18961.7, subds. (c) & (h) [information shared by or disclosed to multidisciplinary team members is deemed private and confidential and is protected from discovery and disclosure by all applicable statutory and common law protections].) Allowing minor's counsel to receive confidential RFA information as a multidisciplinary team member would impede her duty to advocate for the child's best interests by preventing her from disclosing such information in any further investigation into the child's circumstances or presenting such evidence in juvenile court. (§ 317.)

2. *Section 16519.55, governing confidentiality of RFA information, directs that RFA information is considered personal information under the Information Practices Act of 1977.*

Charlotte argues the Directives authorize Counsel to obtain RFA information on her behalf under Civil Code section 1798.24, subdivision (k) of the Information Practices Act of 1977, which authorizes the release of personal information to any person pursuant to a subpoena, court order, or other compulsory process if the agency reasonably attempts to notify the individual to whom the record pertains prior to any disclosure.

The Agency asserts the Directives mandate the release of the written report to the RFA applicant pursuant to Civil Code section 1798.24, subdivision (a) and does not authorize the Agency to release the written report to minor's counsel. (Directives, § 4-04(c)(A).) Moreover, the Agency argues Civil Code section 1798.24 prohibits the agency from disclosing any personal information in a manner that would link the

20

information disclosed to the individual to whom it pertains, in this case, the RFA applicant. (*Id.*, subd. (a).)

We agree with the Agency that section 4-04(c)(A) of the Directives merely ensures the applicant will receive a copy of the written report of his information and does not authorize the release of the report to minor's counsel. However, in noting that Civil Code section 1798.24 prohibits the agency from disclosing any personal information in a manner that identifies the applicant, the Agency does not acknowledge the many exceptions listed in that statute. As relevant here, Civil Code section 1798.24, subdivision (k) permits the release of confidential information "[t]o any person pursuant to a subpoena, court order, or other compulsory legal process." This exception, however, does not advance Charlotte's argument the juvenile court was authorized to order the county agency to release Aunt and Uncle's confidential information. As used in Civil Code section 1798.24, the term "agency" refers only to state agencies and specifically excludes local agencies, which include a county and any county agency. (*Id.*, § 1798.3.) This suggests minor's counsel may subpoena, or seek a court order for release of, RFA information from the CDSS but not from a county agency.

21

D

*Role of Minor's Counsel*

Under CAPTA, a state must ensure appointment of a specially trained guardian ad litem in every judicial proceeding involving an abused or neglected child. (42 U.S.C. § 5106a(b)(2)(B)(xiii).) The child's guardian ad litem is responsible for evaluating "the situation and needs of the child," making "recommendations to the court concerning the best interests of the child," and representing and protecting "the rights and best interests of the child." (42 U.S.C. § 5106a(b)(2)(B)(xiii)(I) & (II).)

The general duties and responsibilities of a dependent child's guardian ad litem include obtaining firsthand a clear understanding of the situation and needs of the child and to make recommendations to the court concerning the best interests of the child as appropriate. (Rule 5.662(d).) Federal and state statutes and rules ensure each child in a dependency matter will have a trained independent guardian ad litem who will investigate and understand the child's circumstances and make recommendations to the court based on an informed evaluation of the child's best interests. (*In re Josiah Z.* (2005) 36 Cal.4th 664, 679-680 (*Josiah Z.*).)

An attorney appointed as a guardian ad litem "advocates for the protection and safety of the child, investigates, participates in presenting evidence to the court, advises the court of the child's wishes, and investigates interests of the child beyond the dependency. (§ 317, subds. (c), (e).)" (*In re Nicole H.* (2011) 201 Cal.App.4th 388, 398 (*Nicole H.*); see also rule 5.660.) An attorney appointed to represent the child has a legal and ethical obligation to represent the child's interests. (*Josiah Z.*, *supra*, 36 Cal.4th at

p. 675; *In re Alexandria P*. (2016) 1 Cal.App.5th 331, 358.) A "primary responsibility" of minor's counsel "is to advocate for the protection, safety, and physical and emotional well-being of the child." (§ 317, subd. (c)(2).) These functions are both more and less than a traditional guardian ad litem in an adversarial proceeding but are precisely those necessary to provide an independent voice for the child. (*Nicole H.*, *supra*, at p. 398 [role of guardian ad litem is more than an attorney's but less than a party's].).)

Section 317, subdivision (f) gives counsel for the child the authority to invoke the psychotherapist-client privilege, physician-patient privilege, and clergyman-penitent privilege on behalf of the child. It also gives counsel access to "all records with regard to the child maintained by a health care facility, . . . health care providers, . . . a physician and surgeon or other health practitioner, . . . or a child care custodian." A "child care custodian" by definition, specifically includes a social worker.[9] In addition, section 317,

_____

[9] As referenced in section 317, subdivision (f), a child care custodian "means a teacher; an instructional aide, a teacher's aide, or a teacher's assistant employed by any public or private school, . . . ; a classified employee of any public school . . . ; an administrative officer, supervisor of child welfare and attendance, or certificated pupil personnel employee of any public or private school; an administrator of a public or private day camp; an administrator or employee of a public or private youth center, youth recreation program, or youth organization; an administrator or employee of a public or private organization whose duties require direct contact and supervision of children; a licensee, an administrator, or an employee of a licensed community care or child day care facility; a headstart teacher; a licensing worker or licensing evaluator; a public assistance worker; an employee of a child care institution including, but not limited to, foster parents, group home personnel and personnel of residential care facilities; *a social worker*, probation officer, or parole officer; an employee of a school district police or security department; any person who is an administrator or presenter of, or a counselor in, a child abuse prevention program in any public or private school; a district attorney investigator, inspector, or family support officer unless the investigator, inspector, or

23

subdivision (f) states:  "Notwithstanding any other law, counsel shall be given access to all records relevant to the case that are maintained by state or local public agencies.  All information requested from a child protective agency regarding a child who is in protective custody, or from a child's guardian ad litem, shall be provided to the child's counsel within 30 days of the request."  (*Ibid*.)

Charlotte argues the phrase in section 317, subdivision (f), "*Notwithstanding any other law, counsel shall be given access to all records relevant to the case that are maintained by state or local public agencies*" entitles minor's counsel to access all records concerning her case that are in the possession of the Agency, including Aunt and Uncle's personal information.  (Italics added.)  She contends minor's counsel has a duty to conduct an adequate and independent investigation and cannot rely exclusively on an Agency's social study in assessing whether a proposed placement is in the child's best interests.

The Agency asserts in view of the entire statute of which it is a part, section 317, subdivision (f) authorizes minor's counsel to access information pertaining only to the child.  While acknowledging the phrases "*notwithstanding any other law*" and "*all records relevant to the case*" are very broad, the Agency submits those phrases are properly interpreted to refer to agency records regarding the child, particularly the child's medical and therapeutic records, not to the agency's record regarding the relative.  The Agency contends this interpretation is consistent with the express legislative purpose to

officer is working with [minor's counsel]; or a peace officer . . . ."  (Pen. Code, § 11165.7, eff. Jan. 1, 2000, Stats. 1992, ch. 459, § 1, italics added.)

24

protect the personal privacy of resource families and preserve the security and confidentiality of placements.

The dependency scheme is complex. A single provision (or several provisions) "cannot properly be understood except in the context of the entire dependency process of which it is part." (*In re Nolan W*. (2009) 45 Cal.4th 1217, 1235.) The words of a statute are construed in context, keeping in mind the nature and obvious purpose of the statute. (*In re Charles G*. (2004) 115 Cal.App.4th 608, 614.) The Legislature has invested minor's counsel with the responsibility to make an informed decision about the child's welfare and best interests. The plain language of section 317, subdivision (f) gives minor's counsel broad authority to access (1) medical, psychological, educational and other records regarding the child (child's records), including those maintained by a social worker, and (2) all records relevant to the case maintained by the state or local agency (case records).

We are not persuaded by the Agency's argument the phrase "all records relevant to the case" permits minor's counsel to access only those records regarding the child's medical and therapeutic records. Minor's counsel's access to the child's records, including those maintained by a social worker, is specifically authorized by other language in section 317, subdivision (f). To interpret the language "all records relevant to the case" as being limited to only the child's records would be redundant. A construction that renders some statutory language surplusage or redundant is to be avoided. (*Bernard v. Foley* (2006) 39 Cal.4th 794, 810–811.)

25

Among the rights granted to a child in foster care is the right "to receive information about his or her out-of-home placement and case plan, including being told of changes to the plan" (§ 16001.9, subd. (20)) and the right to "be involved in the . . . plan for permanent placement" (*id*., subd. (19)).  A dependent child who has been removed from his home due to abuse or neglect has a compelling interest in a secure, safe, and nurturing placement, preferably with a suitable relative.  (*Dakota H*., *supra*, 132 Cal.App.4th at p. 223; *Esperanza C*., *supra*, 165 Cal.App.4th at p. 1055; §§ 361.3, 16519, subd. (d).)  A placement decision may have lifelong consequences for the child.  Thus, some records maintained by the agency concerning the suitability of a relative to care for the child will fall within the meaning of "all records relevant to the case." (§ 317, subd. (f).)

We reject the Agency's argument Charlotte has overstated the role and responsibilities of minor's counsel, and that minor's counsel does not need to access confidential RFA information because her duties are merely permissive under section 317, subdivision (e).  Minor's counsel has a unique responsibility to her client.  She provides an independent voice for a child (*Nicole H.*, *supra*, 201 Cal.App.4th at p. 398) and has a legal and ethical obligation to represent the child's interests (*Josiah Z.*, *supra*, 36 Cal.4th at pp. 675-677).  While minor's counsel, like any attorney, has discretion on how to best serve her client, her additional, and primary, responsibility is to advocate for the protection, safety, and physical and emotional well-being of the child after obtaining a clear understanding of the situation and needs of the child.  (§ 317, subd. (c)(2); rule 5.662(d).)  Minor's counsel determines the information she needs to best represent her

26

client and make informed recommendations to the court concerning the best interests of the child.  (Rule 5.662(d).)

While the language giving minor's counsel access to "all records relevant to the case that are maintained by state or local public agencies" is broad, we recognize the emphasis the Legislature places on maintaining the confidentiality of RFA information and the privacy and security of the child's placement.  In addition, a resource family[10] is entitled to notice before any portion of his record is released to a person or entity other than those specifically identified under the statutory framework of the RFA.  As we will discuss, some of the RFA information may be part of the child's case file.  There may be a dispute concerning which records are relevant to the case, which in most cases will be limited to those records relevant to the child's placement with a relative under section 361.3.  Thus, the language instructing the agency to provide all records relevant to the child's case to minor's counsel "within 30 days of the request" must be considered in view of the statutes and regulations designed to protect the confidentiality of a resource family's RFA information.

E

*Some RFA Information is a Part of the Child's Case File*

The minor who is the subject of the proceeding, the attorneys for the parties, and judges who are actively participating in dependency proceedings involving the child, may receive a copy of the case file.  (§ 827, subds. (a)(1), (5).)  A juvenile case file includes

---

10  In the interests of brevity, "resource family" also includes an RFA applicant.

documents made available to probation officers, social workers of child welfare services programs, and court-appointed special advocate (CASA) volunteers in preparation of reports to the court. (Rule 5.552.) It also includes documents relating to a child concerning whom a petition has been filed in juvenile court that are maintained in the office files of probation officers, social workers of child welfare services programs, and CASA volunteers. (*Ibid*.) Thus, a case file includes all documents filed in the child's dependency proceeding, documents made available to a Child Welfare Services (CWS) social worker in preparation of court reports, and other documents related to the child that are maintained in the office files of CWS social workers.[11] (*R.S. v. Superior Court* (2009) 172 Cal.App.4th 1049, 1054 (*R.S.*).)

Section 4-04(c)(1)(B) of the Directives gives the social worker the discretion to include information from the written report in any social study prepared for the juvenile court to assist the court in determining whether placement with the relative is appropriate under section 361.3. (Directives, § 4-04(c)(1)(B).) "Social study" means any written report (not to be confused with the RFA written report) furnished to the juvenile court and to all parties or their counsel by the county in any matter involving the custody, status, or welfare of a dependent child. (§ 355, subd. (b)(1).) Information that is

---

[11] We assume, for purposes of this opinion, that a confidential case file maintained by the agency under section 4-04(c) of the Directives is not an "office file" of a social worker of a child welfare services program.

28

otherwise confidential and not specifically required under section 361.3[12] shall not be included in the social study.  (Directives, § 4-04(c)(1)(B).)  Because portions of the written report relevant to a section 361.3 hearing may be included in a social study provided to the juvenile court and parties, a resource family's interest in maintaining the

---

[12]    Section 361.3 directs that preferential consideration be given to a request by a relative for the child's placement.  "In determining whether placement with a relative is appropriate, the county social worker and court shall consider, but shall not be limited to, consideration of all the following factors:

"(1) The best interest of the child, including special physical, psychological, educational, medical, or emotional needs.

"(2) The wishes of the parent, the relative, and child, if appropriate.

"(3) The provisions of Part 6 (commencing with Section 7950) of Division 12 of the Family Code regarding relative placement.

"(4) Placement of siblings and half siblings in the same home, unless that placement is found to be contrary to the safety and well-being of any of the siblings, as provided in Section 16002.

"(5) The good moral character of the relative and any other adult living in the home, including whether any individual residing in the home has a prior history of violent criminal acts or has been responsible for acts of child abuse or neglect.

"(6) The nature and duration of the relationship between the child and the relative, and the relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful.

"(7) The ability of the relative to do the following:

    "(A) Provide a safe, secure, and stable environment for the child.

    "(B) Exercise proper and effective care and control of the child.

    "(C) Provide a home and the necessities of life for the child.

    "(D) Protect the child from his or her parents.

    "(E) Facilitate court-ordered reunification efforts with the parents.

    "(F) Facilitate visitation with the child's other relatives.

    "(G) Facilitate implementation of all elements of the case plan.

    "(H)(i) Provide legal permanence for the child if reunification fails.  [¶] . . . [¶]

    "(I) Arrange for appropriate and safe child care, as necessary.

"(8)(A) The safety of the relative's home." (§ 361.3.)

confidentiality of information specifically required at a section 361.3 hearing is somewhat diminished.[13]

In its supplemental briefing, the Agency acknowledges that some "RFA-related information" may be included in the juvenile case file. The Agency defines "RFA-related information" as information collected by the CWS case social worker to facilitate the child's placement with a particular relative, distinguishing such information from information collected or created by a RFA social worker and maintained in a separate, confidential file. Notwithstanding in which file the written report is maintained, it appears that a CWS social worker may rely on information in the written report to make the required assessment under section 361.3. We presume the Legislature, in enacting section 16519.5, was aware of sections 317 and 827, and the definition of juvenile case file in rule 5.552. (*In re W.B.* (2012) 55 Cal.4th 30, 57 [Legislature is presumed to know about existing case law when it enacts or amends a statute].) We therefore conclude the portions of the written report that are relevant to the child's placement with a relative under section 361.3 are part of the juvenile case file, notwithstanding the location of the written report.

However, section 827 further provides that if a juvenile case file, or any portion of it, is privileged or confidential under any other state law or federal law or regulation, the requirements of that state law or federal law or regulation prohibiting or limiting release

---

13     We presume the Agency will not have included information such as social security numbers, dates of birth, driver's license numbers, medical record numbers, employee identification numbers, etc., and detailed financial information in the written report or a court report.

of the juvenile case file or any portions of the case file will prevail. Unless a person is entitled to access to the juvenile court file under section 827, subdivision (1)(A) to (P) *and* is entitled to access under the other state law or federal law or regulation without a court order, all those seeking access, pursuant to other authorization, to portions of, or information relating to the contents of, case files protected under another state law or federal law or regulation, shall petition the juvenile court. (§ 827, subd. (3)(A).) Before releasing the juvenile case file or any portion of it, the court is required to give notice and an opportunity to file an objection to the release of the record or report to all interested parties. (*Id.*, subd. (a)(3)(B).)

Minor's counsel meets the requirements under section 827, subdivision (3)(A). A child who is the subject of the proceeding, and his or her counsel, are entitled to receive a copy of the child's case record. (§827, subds. (a)(1)(C), (E), (a)(5).) As we have discussed, *ante*, section 317, subdivision (f) grants minor's counsel access to all records relevant to the case that are maintained by the state or local agency. A local agency maintains the child's case file.

If minor's counsel believes release of additional RFA information is necessary to serve the best interests of her client and that information is, or should be, a part of the child's case file, she may petition the juvenile court to order the Agency to release such information under section 827 and rule 5.552. "A juvenile court has broad and exclusive authority to determine whether, and to what extent, to grant access to confidential juvenile records." (*R.S.*, *supra*, 172 Cal.App.4th at p. 1055.)

31

If minor's counsel seeks confidential information, she must petition the court for authorization to inspect the file under section 827. The specific files sought must be identified based on knowledge, information, and belief that such files exist and are relevant to the purpose for which they are being sought. (Rule 5.552(b)(1).) Petitioner must describe in detail the reasons the files are being sought and their relevancy to the proceeding or purpose for which petitioner wishes to inspect or obtain the files. (Rule 5.552(b)(2).) The court must review the petition and if petitioner does not show good cause, may issue a summary denial. If petitioner shows good cause, the court may set a hearing. In addition to the persons and entities listed in rule 5.552(c)(1), the clerk must notice the resource family. (Rule 5.552(d); § 827, subd. (3)(B).)

We draw guidelines from the California Rules of Court for the juvenile court to consider in making its ruling. (*R.S.*, *supra*, 172 Cal.App.4th at p. 1054.) In determining whether to authorize inspection or release of confidential files, in whole or in part, the court must balance the interests of the child and other parties to the juvenile court proceedings, and the interests of the resource family. If the court grants the petition, the court must find that the need for discovery outweighs the policy considerations favoring confidentiality. The court may permit disclosure of confidential information only insofar as is necessary, and only if minor's counsel shows by a preponderance of the evidence that the records requested are necessary and have substantial relevance to the legitimate needs of the child. If, after in camera review and review of any objections, the court determines that all or a portion of the confidential file may be disclosed, the court must make appropriate orders, specifying the information to be disclosed and the procedure for

32

providing access to it. The court may issue protective orders to accompany authorized disclosure, discovery, or access. (Rule 5.552(d).)

In reaching the conclusion that the juvenile court may authorize minor's counsel to access confidential RFA information related to section 361.3, we keep in mind that the primary purpose of dependency proceedings is to protect the child. (§ 300.2.) Each child has a compelling interest in a safe and secure placement. The child, through counsel, has the right to challenge the social worker's relative placement assessment under section 361.3, which necessarily includes the due process rights to cross-examine the social worker and present evidence. Minor's counsel has unique responsibilities to her client, including the duty to investigate as necessary to understand the child's circumstances and make recommendations based on an evaluation of the child's best interests. (42 U.S.C. § 5106a(b)(2)(B)(xiii); § 317, subd. (c)(2); *Nicole H.*, *supra*, 201 Cal.App.4th at p. 398; *Josiah Z.*, *supra*, 36 Cal.4th at pp. 679-680.) We are also mindful of the limited resources in juvenile court and see no need for minor's counsel to duplicate, at taxpayer expense, elements of an investigation the taxpayer has already funded through RFA. (*In re Alanna A*. (2005) 135 Cal.App.4th 555, 566 [resources available to the juvenile court are not unlimited].)

The RFA strictly protects the confidentiality of applicant and resource family information. (§ 16519.55.) Nevertheless, regulations authorize the social worker to include confidential information relevant to a section 361.3 assessment of a relative resource family in her social study or assessment, which is filed with the court and served

on the parties.[14] (Directives, § 4-04(c)(1)(B); §§ 355, subd. (b), 358.1, 361.3.) A prospective relative resource family applicant should be made aware of juvenile court placement procedures and the use of certain confidential information at a section 361.3 hearing. In this case, where there was more than substantial evidence to show that a relative seeking placement had used methamphetamine in the past and had engaged in an act of domestic violence—which bears directly on the safety and security of the proposed placement—minor's counsel would not have met her responsibilities to Charlotte had she relied on the social worker's summary placement assessment without further inquiry.[15]

Because we resolve this appeal on statutory grounds, we do not reach Charlotte's argument the juvenile court's ruling violated her federal constitutional rights to equal protection under the law by elevating her interests in safety over her relatives' interests in privacy. (See *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230-231 [because we resolve the case on statutory grounds, we need not

---

[14]    The Agency draws our attention to newly enacted section 16519.555, effective January 1, 2019, which limits the release of the written report to the resource family, a tribal agency, the county child welfare agency or probation department, CDSS, a licensed foster family agency, county adoption agency, and pursuant to the Interstate Compact on the Placement of Children. This section does not address the use of information in the written report by the CWS social worker to assess the suitability of a relative's home under section 361.3.

[15]    We do not suggest minor's counsel should routinely review RFA information in all cases. Here, the Agency's inability to place Charlotte in the home of relatives who had previously been approved to care for her would have raised sufficient concerns to require further inquiry and investigation by minor's counsel even if information about the relative's past methamphetamine use and domestic violence had not inadvertently been disclosed.

address the constitutional issue]; accord, *People v. Barasa* (2002) 103 Cal.App.4th 287, 292.)

F

*Release of Personal Information to Minor's Counsel Does Not Violate the Separation of Powers Doctrine*

The Agency asserts the licensing, approval, and funding of resource family homes are core functions of the executive branch and a juvenile court order directing the agency to release confidential RFA information to minor's counsel for litigation purposes would violate the separation of powers doctrine.

We are not persuaded by the Agency's assertion that a court order directing the Agency to release confidential RFA information to Counsel results in a violation of separation of powers. The argument assumes Counsel wanted confidential information to challenge the Agency's approval of Aunt and Uncle as a resource family. This assumption is not supported in the record. Counsel did not, and does not, challenge the Agency's approval of Aunt and Uncle as a resource family, which we agree is a core executive function of the child welfare agency. (See *Esperanza C.*, *supra*, 165 Cal.App.4th at p. 1060.)[16] Instead, Counsel sought the records for use in assessing whether Charlotte's placement with Aunt and Uncle was safe, appropriate, and in her best interests under section 361.3.

---

[16] The agency's exemption process is not necessarily immune from judicial review within the context of a child's dependency proceedings. (*Esperanza C.*, *supra*, 165 Cal.App.4th at pp. 1058-1060 [juvenile court has the authority to determine whether the agency abused its discretion in granting or denying a criminal records or child welfare exemption].)

The social worker is authorized to include confidential RFA information relevant to a placement request under section 361.3 in her social study or assessment, which is filed with the court and served on the parties. (Directives, § 4-04(c)(1)(B); §§ 355, subd. (b), 358.1, 361.3.) In a section 361.3 hearing, the parties, including the child through counsel, have the right to present evidence and cross-examine witnesses. The decision whether to place a child with the relative is made by the juvenile court. Therefore, an order by the juvenile court to release a relative's RFA information regarding the child's placement with that relative under section 361.3 does not violate separation of powers.

II

*Appeal from the Section 361.3 Hearing*

Charlotte argues the juvenile court violated her due process rights by limiting her ability to cross-examine witnesses and present evidence. She contends the court erred by securing a public defender for Uncle and allowing him to plead the Fifth Amendment; excluding the domestic violence restraining order and/or attached documentation on hearsay grounds; sustaining objections to questions concerning the incident of domestic violence between Uncle and his father and whether Uncle participated in domestic violence treatment or substance abuse testing; and by excluding testimony of RFA social workers concerning information they obtained during the relatives' RFA process, their opinion about Uncle's suitability to care for Charlotte, and whether there was any current risk to Charlotte in Aunt and Uncle's home.

Charlotte explicitly states she is not requesting reversal of the orders placing her in Aunt and Uncle's care or seeking a new section 361.3 hearing. Because Charlotte

36

implicitly concedes any trial error was harmless, we need not examine the claim her due process rights were violated.

## DISPOSITION

We reverse the juvenile court's finding it does not have the authority to allow minor's counsel to access the confidential information of a relative seeking placement of the child under section 361.3.  In all other respects, the orders are affirmed.


BENKE, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

37