Filed 12/9/22  In re C.B. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re C.B., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> NEIL B., <br><br>     Defendant and Appellant. | A164837 <br><br> (San Francisco City & County Super. Ct. No. JD203045) |

At the conclusion of a status review hearing, the juvenile court terminated reunification services for Neil B. (father) and declined to place C.B. (child) with paternal grandmother (grandmother). Father appeals. He contends the San Francisco Human Services Agency (Agency) and the court violated the relative placement provisions of Welfare and Institutions Code section 361.3.[1]  We affirm.

_____

[1] Undesignated statutory references are to this code. We incorporate by reference our unpublished opinion in father's prior appeal from the jurisdictional and dispositional orders, *In re C.B.* (Apr. 11, 2022, A162229/A162585), and we take judicial notice of portions of the reporter's transcript in that appeal. We recite only those facts necessary to resolve the

1

## BACKGROUND

In February 2020, the Agency filed a petition alleging father failed to meet the nearly five-month-old child's medical needs. The juvenile court placed the child in foster care with his half sister; thereafter it ordered reunification services for father.

The juvenile court held a combined hearing on jurisdiction and disposition over two days in January and March 2021. At the conclusion of the first day of the hearing, father's counsel asked the Agency to assess grandmother for placement. Thereafter, the Agency began the "Resource Family Approval" (RFA) process for grandmother, but it noted she was ineligible for placement while father lived with her.[2] Shortly before the hearing concluded, father moved out of the apartment. Grandmother completed the assessment paperwork; her residence needed to be assessed by the RFA unit. At the conclusion of the hearing, the court declared the child a dependent. (§ 300, subd. (b).) It ordered the child to remain with foster parents — deeming them de facto parents — but it urged the Agency to make "every effort" to investigate father and grandmother for placement.

In August 2021, the Agency recommended terminating father's reunification services, noting he engaged only sporadically with the provided services and failed to visit the child consistently. The child — then almost

issue in this appeal, mentioning family members who are not parties only when necessary.

[2] The purpose of the RFA process is to provide " 'a unified, family friendly, and child-centered resource family approval process . . . .' [Citation.] An approved resource family has successfully met both the home environment assessment standards and the permanency assessment criteria necessary for providing care for a child." (*In re Charlotte C.* (2019) 33 Cal.App.5th 404, 416.) "There is no fundamental right to approval as a resource family," and approval of a resource family does not guarantee placement. (§ 16519.5, subds. (c)(3), (c)(6).)

two years old — was attached to de facto parents and "thriving" in their home. De facto parents were ready to adopt the child. Father suggested the Agency consider grandmother for the child's placement, but the Agency reported she had withdrawn her placement application.

The combined 6-, 12-, and 18-month review hearing took place over several days between November 2021 and March 2022. At the hearing, social worker Blair Cowperthwaite described the RFA referral and application process. Cowperthwaite requested grandmother's home be assessed in early 2021. After father moved out of grandmother's residence in March, grandmother went through the RFA process with the assistance of RFA social worker Angela Smith. Smith "worked closely" with grandmother to mitigate her home's clutter and fire hazards. At the end of July, grandmother withdrew her placement application, "reporting she had a lot going on at that time, so that placement was no longer an option." Smith notified Cowperthwaite of grandmother's decision. The Agency did not discourage grandmother from continuing the placement application process. Cowperthwaite testified the child had lived with de facto parents for two years. The child was "healthy . . . and he gets to interact with a lot with [*sic*] other kids at their church, and he obviously still gets to see his parents and his sister, so he is thriving in his placement."

Grandmother testified she has several grown children. For many years, she volunteered at a day care center. She completed the RFA application, a background check, and parenting education; she did not withdraw her application. It was grandmother's understanding that her home was not approved for placement because of an issue with the heater in her rented apartment. Smith told grandmother the heater needed to be covered or removed, but the Agency neither followed up with her about the

3

heater, nor offered to offset the cost. Grandmother did not use the heater, but she was unable to remove it because the apartment building has central heating. She met the child for the first time at a supervised visit in February 2022; the visit "melted" her heart. She hadn't visited the child earlier because she does not drive, and de facto parents live some distance away. She was also unaware she could visit the child. Grandmother wanted the child placed with her.

On cross-examination, grandmother acknowledged the heater and clutter in her home were safety hazards, and that Smith spoke with her more than once regarding the hazards. Grandmother did not ask her landlord to cover or remove the heater, and she never investigated the cost to cover it. She did not know why Smith reported she had withdrawn her application, and she denied asking Cowperthwaite to restart the RFA application process. Father testified the visit between grandmother and the child was "beautiful."

During closing argument, father's counsel urged the juvenile court to place the child with him or grandmother. Counsel also argued the Agency violated the relative placement preference by failing to assess grandmother before disposition, and by not seriously considering her RFA application. At the conclusion of the hearing, the court issued a through written order terminating father's reunification services. It also declined to place the child with grandmother, finding it was in the child's best interest to remain with de facto parents. The court determined the "depth of love and enthusiasm" grandmother possessed for the child did not outweigh the disruption moving the child to a new placement would cause, particularly given that grandmother had just met the child. Finally, the court noted a safety concern in grandmother's home — a heater with an opening "through which a toddler

4

could inadvertently insert his hand and get hurt or burned" — supported the Agency's denial of placement.

## DISCUSSION

Father contends the Agency and the juvenile court violated the relative placement provisions of section 361.3.

We begin with a brief overview of the statutory scheme. When a child is removed from parental custody under section 361, the juvenile court places the child's care and custody under the social worker's supervision. (§ 361.2, subd. (e).) The social worker may place the child in several locations, including in the approved home of a relative. (*Id.*, subds. (e)(1)–(8), (e)(2).) Pursuant to section 361.3, subdivision (a), "preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative." The relative placement preference "does not create an evidentiary presumption in favor of a relative, but merely places the relative at the head of the line when the court is determining which placement is in the child's best interests." (*In re Sarah S.* (1996) 43 Cal.App.4th 274, 286.)

When determining whether placement with a relative is appropriate, the social worker and the juvenile court must consider, at minimum, eight enumerated factors. (*In re J.Y.* (2022) 76 Cal.App.5th 473, 477 (*J.Y.*); § 361.3, subds. (a)(1)–(8).) Among these factors are the "best interest of the child"; the "wishes of the parent, the relative, and child, if appropriate"; the relative's "good moral character"; the "nature and duration of the relationship between the child and the relative, and the relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful"; and the "safety of the relative's home." (§ 361.3, subds. (a)(1), (2), (5), (6), (7)(A), (8)(A).)

5

Several courts have held the relative placement preference applies "early in dependency proceedings, *before* the disposition order." (*J.Y., supra,* 76 Cal.App.5th at p. 477, italics added; *In re M.H.* (2018) 21 Cal.App.5th 1296, 1303; *In re K.L.* (2016) 248 Cal.App.4th 52, 65–66.) Under these cases, the preference applies *after* disposition only if the child's placement must change. (*J.Y.,* at p. 478.) When a new placement is required, consideration must be " 'given . . . to relatives who have not been found to be unsuitable and who will fulfill the child's reunification or permanent plan requirements.' " (*Ibid.*) The social worker must consider the factors in section 361.3, subdivision (a), as well as "whether the relative has established and maintained a relationship with the child." (§ 361.3, subd. (d).)

Father argues the relative placement preference applies throughout the reunification period irrespective of whether a new placement is required, and he cites cases so holding. (See, e.g., *In re Maria Q.* (2018) 28 Cal.App.5th 577, 592; *In re Joseph T.* (2008) 163 Cal.App.4th 787, 795.) We needn't resolve the issue. Instead, we assume without deciding the preference applies at a review hearing following disposition — even when a new placement is not required — and we hold the juvenile court did not abuse its discretion in declining to place the child with grandmother. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 320.)[3]

Grandmother was eligible for preferential consideration under section 361.3. But as we have stated, preferential consideration "does not create an evidentiary presumption in favor of a relative." (*In re Sarah S., supra,*

---

[3] Father seems to assert the Agency violated the relative assessment and placement statutes by "waiting a year (from detention to disposition) to start the assessment process" for grandmother. We rejected this argument in his prior appeal; we decline to revisit the argument here.

43 Cal.App.4th at p. 286.) Instead, section 361.3 "assures an interested relative that . . . her application for placement will be considered before a stranger's request." (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 863.) Here, grandmother's request for placement *was* considered — and her home evaluated. The Agency offered evidence grandmother's home was "no longer an option" after she withdrew her application.

Father insists the juvenile court failed to consider the factors set forth in section 361.3, subdivision (a). We cannot agree. Although the court did not explicitly reference the section 361.3 factors, the record establishes it "conducted a multifactorial assessment of [the child's] best interests." (*In re Maria Q.*, *supra*, 28 Cal.App.5th at pp. 599–600.) In making its placement determination, the court considered the child's needs; father and grandmother's wishes; the nature and duration of the child's relationship with grandmother and her desire to care for and provide permanency for the child; and the safety of her home. (§ 361.3, subds. (a)(1), (2), (6), (7)(A), (8)(A) & (d); *In re Maria Q.*, at pp. 599–600; *In re Miguel E.* (2004) 120 Cal.App.4th 521, 547 [whether child welfare agency has approved the relative's home is a relevant consideration].) Also before the court was evidence of grandmother's love for the child and her good moral character (§ 361.3, subd. (a)(5)). We presume the court " 'considered all the pertinent matters presented to it.' " (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1156.)

Upon considering this information, the juvenile court concluded it was not in the child's best interest to move him from his home of two years — a stable and loving home where he was thriving — to place him with a relative he had just met whose home contained safety hazards. The evidence amply supports this conclusion. To be sure, grandmother loves the child, but the " 'overriding concern of dependency proceedings . . . is not the

interest of extended family members but the interest of the child,' whose bond with a foster parent may require that placement with a relative be rejected. [Citation.] 'The passage of time is a significant factor in a child's life; the longer a successful placement continues, the more important the child's need for continuity and stability becomes in the evaluation of [his] best interests.' " (*J.Y.*, *supra*, 76 Cal.App.5th at pp. 484, 486 [juvenile court erred by uprooting child and placing him with relatives who were "virtual strangers"].) On this record, any assumed error in failing to make express findings under section 361.3 is harmless. (*In re Joseph T.*, *supra*, 163 Cal.App.4th at p. 798 [failure to make statutory findings harmless where record contained ample evidence the relative placement preference "was overridden"].)

Father faults the Agency for failing to do more to help grandmother remedy the safety hazards in her home, and for "misrepresenting" she withdrew her placement application. This argument — premised on a one-sided view of the evidence — is unavailing. At the review hearing, the Agency offered evidence Smith "worked closely" with grandmother to mitigate her home's hazards, but grandmother withdrew her application for placement. Grandmother testified to the contrary, but the juvenile court was not required to accept her testimony. In any event, the court does not appear to have relied on any such withdrawal when making its placement determination. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 319; *Alicia B. v. Superior Court*, *supra*, 116 Cal.App.4th at p. 864.) Father's belated evidentiary objections to the Agency's evidence are forfeited. (*In re D.D.* (2019) 32 Cal.App.5th 985, 992.) Additionally, father cites no persuasive authority supporting his assertion that the Agency must remediate hazards in the relative's home in applying the placement preference. Finally, we decline to interpret the court's previous order requiring the Agency to make

"every effort" to *investigate* grandmother for placement as a command to *place* the child with her.

Father also maintains the juvenile court failed to give sufficient weight to the advantages of placing the child with grandmother — he reasons placing the child with her would permit "frequent visitation" with the child's half sister and "frequent contact" with him. While a relative's ability to facilitate visitation with a child's family members is a relevant consideration (§ 361.3, subd. (a)(7)(F)), father points to no evidence in the record that grandmother would facilitate visits with the child's half sister (who was placed with her maternal great-grandmother), whereas the Agency offered evidence de facto parents were willing and able to do so. And any willingness on grandmother's part to "facilitate court-ordered reunification efforts" with father (*id.*, subd. (a)(7)(E)) was immaterial, as the court terminated his reunification services.

When making a placement decision, the juvenile court must balance the "benefits of maintaining extended family relationships" with "the best interests of the child." (*Alicia B. v. Superior Court, supra,* 116 Cal.App.4th at p. 864.) We have no doubt the child would derive a benefit from cultivating a relationship with his loving grandmother, but "the fundamental duty of the juvenile court is to 'assure the best interest of the child.' " (*Ibid.*) The court's placement decision was grounded in the child's best interest. It was not an abuse of discretion. (*Ibid.*; *In re Stephanie M., supra,* 7 Cal.4th at pp. 319–321; *In re Jessica Z.* (1990) 225 Cal.App.3d 1089, 1100.)

## DISPOSITION

The juvenile court's order issued at the conclusion of the combined 6-, 12-, and 18-month review hearing is affirmed.

9

_____

Rodríguez, J.

WE CONCUR:

_____

Tucher, P. J.

_____

Petrou, J.

A164837