163 Cal.App.4th 1535 (2008)
In re KRISTEN B., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent,
v.
ELIZABETH N., Defendant and Appellant.
No. D051932.
Court of Appeals of California, Fourth District, Division One.
June 18, 2008.
*1537 Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.
John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Plaintiff and Respondent.
Susan Bookout, under appointment by the Court of Appeal, for Minor Kristen B.

*1538 OPINION
McINTYRE, J.
This case involves 14-year-old Kristen B., who became a dependent of the juvenile court and was removed from parental custody after she consistently disclosed to family members, social workers and law enforcement agents that her stepfather had sexually abused her. Shortly before the jurisdiction hearing, Kristen recanted. Kristen's trial attorney (minor's counsel), recognizing her dual role of advocating for her client's stated interest and advocating for her client's safety and best interests, called Kristen to testify at the jurisdiction hearing. Kristen testified she had lied about the sexual abuse and wanted to return home. In closing argument, minor's counsel advised the court of Kristen's position but advocated against returning her to parental custody. The court sustained the allegations of the petition, declared Kristen a dependent and placed her in out-of-home care.
Kristen's mother, Elizabeth N., appeals the court's jurisdictional and dispositional findings. Elizabeth contends Kristen received ineffective assistance of counsel when minor's counsel was impermissibly argumentative and undermined Kristen's credibility on direct examination. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
In August 2007 the San Diego County Health and Human Services Agency (Agency) filed a petition in the juvenile court under Welfare and Institutions Code section 300, subdivision (d) alleging Kristen's stepfather, Arthur N., sexually abused her between May 2006 and June 2007. (Statutory references are to the Welfare and Institutions Code.) Kristen disclosed the details of the sexual abuse to several social workers and a police detective, all of whom found her to be credible. Kristen previously reported the sexual abuse to her brother Aaron, her grandmother and an aunt. Aaron and the grandmother both noticed behavior by Arthur that caused them to suspect he was being inappropriate with Kristen. Arthur denied any inappropriate behavior. Elizabeth refused to believe Kristen and told her to say the sexual abuse never happened. Elizabeth claimed Kristen lied because she did not want to move from Santee where her boyfriend lived. Kristen was adamant that the abuse occurred and was upset that her mother did not believe her. Kristen was afraid to go home because she believed the abuse might continue.
On October 3, 2007, Kristen had an unsupervised visit with Elizabeth in violation of a court order. A week later, Kristen prepared a written statement recanting the allegations of sexual abuse by Arthur. She said she lied about *1539 the sexual abuse because she wanted to stay in Santee where her boyfriend lived.
At a contested jurisdiction hearing, social worker Tonya Sloan testified she discussed the recantation with Kristen and concluded Kristen "was either being prompted or coached so she could go home to her mother." In Sloan's opinion, Kristen was at risk of emotional abuse or continued sexual abuse if she returned home.
On direct examination of Kristen, minor's counsel asked questions that allowed Kristen to explain why she fabricated the allegations of sexual abuse and why she recanted. Minor's counsel also questioned Kristen about the unauthorized visit with Elizabeth:
"Q [MINOR'S COUNSEL:] Had you been told by anyone that you shouldn't talk about the case with your mom?
"A [KRISTEN:] Yes.
"Q [MINOR'S COUNSEL:] Who told you that?
"A [KRISTEN:] My social worker, you, my lawyer.
"Q [MINOR'S COUNSEL:] So this was the first time you had been with your mom for about three months, just you and her, and you didn't talk about the case?
"A [KRISTEN:] Yes.
"Q [MINOR'S COUNSEL:] Can you understand why it might be a little surprising that you wouldn'twell, strike that. [¶] How come you didn't talk about the case?
"A [KRISTEN:] Because I knew that I wasn't supposed to. Because I didn't want toI honestly didn't want to talk about it because I honestly felt bad at that point about the whole thing and because I just wanted to know, you know, how everybody in my family [was] doing.
"Q [MINOR'S COUNSEL:] But you also knew you weren't supposed to be alone with your mom?
"A [KRISTEN:] Uh-huh.
*1540 "Q [MINOR'S COUNSEL:] So, again, this is the first time you had been alone with your mom in a while. So how can we believe that you didn't talk about
"THE COURT: Sustain my own objection. Argumentative."
In closing argument, minor's counsel acknowledged she had a dual role in representing Kristen. She asked the court to consider the testimony of this articulate 14 year old, who had clearly stated her position under oath that she lied about the sexual abuse allegations, and was now asking the court to dismiss the petition and allow her to return home. Recognizing her duty to advocate for Kristen's best interests, minor's counsel argued the evidence showed returning Kristen to parental custody would be detrimental to her physical and emotional well-being based on a substantial risk of sexual abuse.
After considering the evidence and hearing argument of counsel, the court found Kristen's allegations of sexual abuse by Arthur were credible, while her recantation was not. The court noted the timing of the recantation was significant because it immediately followed a visit between Kristen and Elizabeth in violation of a court order. The court also noted Kristen had consistently reported the allegations of sexual abuse to at least five professionals, and these allegations were corroborated by Arthur's inappropriate conduct as observed by Aaron and the grandmother.

DISCUSSION
Elizabeth contends the court's jurisdictional findings were the result of ineffective assistance of minor's counsel, who impermissibly attacked Kristen's in-court credibility by the argumentative nature of her direct examination. Elizabeth asserts a conflict arose because minor's counsel disagreed with Kristen's stated position to have the petition dismissed and to return home. Thus, she argues, an attorney's duty of loyalty prohibited minor's counsel from calling Kristen as a witness and then challenging her testimony.

A
(1) To succeed on a claim of ineffective assistance of counsel, the appellant must show (1) counsel's representation fell below an objective standard of reasonableness; and (2) the deficiency resulted in demonstrable prejudice. (In re Nada R. (2001) 89 Cal.App.4th 1166, 1180 [108 Cal.Rptr.2d 493]; Strickland v. Washington (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, *1541 104 S.Ct. 2052].) Unless the record affirmatively establishes counsel had no rational tactical purpose for the challenged act or omission, we must affirm the judgment. (In re Daisy D. (2006) 144 Cal.App.4th 287, 293 [50 Cal.Rptr.3d 242]; In re Merrick V. (2004) 122 Cal.App.4th 235, 255 [19 Cal.Rptr.3d 490].) Moreover, "[a] court may reject a claim of ineffective counsel if the [appellant] fails to show the result would have been more favorable but for trial counsel's failings." (In re N.M. (2008) 161 Cal.App.4th 253, 270 [74 Cal.Rptr.3d 138].)

B
(2) Section 317 provides for the appointment of counsel for a child in a dependency proceeding. Counsel appointed for children in dependency cases have duties and responsibilities unique in the law. A primary responsibility of a minor's counsel appointed under section 317 is "to advocate for the protection, safety, and physical and emotional well-being of the child." (§317, subd. (c).) In representing the child's interests, counsel is required to make a factual investigation and may "make recommendations to the court concerning the child's welfare...." (§ 317, subd. (e).) Counsel must interview a child who is at least four years old to determine his or her wishes and assess the child's well-being and must advise the court of the child's wishes. "Counsel for the child shall not advocate for the return of the child if, to the best of his or her knowledge, that return conflicts with the protection and safety of the child." "The court shall take whatever appropriate action is necessary to fully protect the interests of the child." (Ibid.)
(3) Despite the seemingly inherent conflict in all dependency cases where a minor's counsel takes a position contrary to the minor's stated wishes, the Legislature has expressly provided that the best interests of the minor, not his or her wishes, determine the outcome of the case. (§ 317; In re Zamer G. (2007) 153 Cal.App.4th 1253, 1266-1267 [63 Cal.Rptr.3d 769] [duty of dependency lawyer representing minor siblings is to advocate for minors' best interests].) "[T]he paramount duty of counsel for minors is not zealously to advocate the client's objectives, but to advocate for what the lawyer believes to be in the client's best interests, even when the lawyer and the client disagree." (Id. at p. 1265.) In this regard, a minor's counsel may not "act as a mouthpiece" for the child or advocate a position counsel has reason to believe might endanger the child. (In re David C. (1984) 152 Cal.App.3d 1189, 1207-1208 [200 Cal.Rptr. 115]; see In re Alexis W. (1999) 71 Cal.App.4th 28, 36 [83 Cal.Rptr.2d 488].) "Counsel's paramount duty to serve the minor's best interests, rather than the minor's wishes, is reinforced by the fact that appointed counsel for minors routinely serve in a dual role, as both the child's legal counsel and the child's guardian ad litem under the *1542 federal Child Abuse Prevention and Treatment Act (CAPTA)." (In re Zamer G., supra, 153 Cal.App.4th at p. 1265, fn. omitted.)
(4) Here, minor's counsel performed her duties under section 317 zealously and effectively by conducting a factual investigation and advocating a position, supported by the evidence, which served to protect Kristen's welfare. (See In re Barbara R. (2006) 137 Cal.App.4th 941, 954 [40 Cal.Rptr.3d 687].) She clearly informed the court of the conflict between Kristen's stated interest and what she believed was in Kristen's best interests. The record provides no basis whatsoever to conclude Kristen received ineffective assistance of counsel when minor's counsel advocated a position she believed was in Kristen's best interests, notwithstanding Kristen's stated wishes. (In re Alexis W., supra, 71 Cal.App.4th at p. 28.)

C
Elizabeth recognizes the duty of minor's counsel to advocate for Kristen's best interests, but nevertheless takes issue with (1) the decision of minor's counsel to call Kristen as a witness; and (2) the manner in which minor's counsel questioned Kristen.
(5) We disagree with Elizabeth to the extent that she argues the duty of loyalty prohibits a minor's attorney, whose position diverges from that of his or her client, from calling the minor as a witness. Nothing in the dependency statutes, or elsewhere, supports the notion that a minor who is deemed competent to testify is precluded from testifying as to his or her wishes simply because the minor's counsel believes those wishes are inconsistent with the minor's safety and best interests. Because a minor's wishes are always relevant and must be communicated to the court (§ 317, subd. (e)), the minor's counsel must have the ability to present those wishes directly by calling the minor to testify.
The record here is devoid of any indication minor's counsel called Kristen as a witness to impeach her or for any other improper purpose. Instead, the record shows Kristen was a willing witness and minor's counsel gave her an opportunity to state, under oath, why she fabricated the sexual abuse allegations and to express her strong wish to have the petition dismissed and to return home. Thus, the decision to allow Kristen to testify was within the wide range of competent representation and entirely consistent with the duty of minor's counsel to carefully balance the wishes of Kristenan articulate teenagerwith her need for safety. (See In re Kerry O. (1989) 210 Cal.App.3d *1543 326, 333 [258 Cal.Rptr. 448] [an attorney has the right to control matters of ordinary trial strategy, such as whether a particular witness should be called].)
(6) Further, the record does not support Elizabeth's claim that a single question, disallowed by the court as argumentative, destroyed Kristen's credibility or resulted in prejudice to Elizabeth. A review of the entire transcript shows minor's counsel sought to elicit testimony from Kristen that would properly assist the court in ascertaining the truth of either the sexual abuse allegations or Kristen's recantation. In this regard, minor's counsel tried to develop facts concerning whether Kristen's recantation was the result of pressure or coaching from Elizabeth. Although the form of a single question ("So how can we believe that you didn't talk about") may have seemed argumentative, trial lawyers, as part of litigation strategy, often use this approach as a preemptive strike against an expected question on crossexamination. In this regard, we do not "`"second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight."'" (People v. Jones (2003) 29 Cal.4th 1229, 1254 [131 Cal.Rptr.2d 468, 64 P.3d 762].)
In any event, the court disallowed the question and minor's counsel redirected her line of inquiry. Counsel cannot be faulted for questioning Kristen in a way that was meant to aid the court in its factfinding role as well as protect Kristen's best interests. Elizabeth has not shown minor's counsel failed to act as a reasonably competent attorney during her direct examination of Kristen.
Further, no prejudice to Elizabeth resulted from the representation Kristen received from minor's counsel. (In re Kristin H. (1996) 46 Cal.App.4th 1635, 1667-1668 [54 Cal.Rptr.2d 722].) The evidence showed Kristen consistently reported Arthur's sexual abuse to family members, social workers and law enforcement agents. The professionals who questioned Kristen found her disclosure of sexual abuse to be credible, and the social worker testified Kristen recanted because she wanted to return home. Kristen's grandmother and brother corroborated the allegations by reporting they had observed Arthur interacting with Kristen in inappropriate ways. The reasons Kristen gave for recanting were remarkably similar to statements previously made by Elizabeth, and the timing of Kristen's recantation was significant because it occurred just after an unauthorized visit with Elizabeth. Even had minor's counsel not asked Kristen a question deemed to be argumentative, it is not reasonably probable the court would have dismissed the petition and returned Kristen to Elizabeth's custody. (In re Alexis W., supra, 71 Cal.App.4th at p. 37.)

*1544 DISPOSITION
The judgment is affirmed.
McConnell, P. J., and Huffman, J., concurred.