Filed 5/20/15  J.L. v. Super. Ct. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| J.L.,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF VENTURA COUNTY,<br><br>     Respondent;<br><br>VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>     Real Party in Interest. | 2d Civil No. B260933<br>(Super. Ct. No. J070107, J070108,<br>J070109, J070110)<br>(Ventura County) |

J.L. (Mother) has filed an extraordinary writ petition to set aside orders of the juvenile court sustaining juvenile dependency petitions (Welf. & Inst. Code, § 300),[1] bypassing reunification services (§ 361.5, subd. (b)(6)), and setting a section 366.26 hearing.  Her children, A.F., C.G., L.L. and W.L., are dependent children coming under the juvenile court law.  We conclude, among other things, that Mother has not shown that she received ineffective assistance from her counsel.  The petition is denied.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

FACTS

Mother has four young children, A.F., C.G., L.L. and W.L.  The Ventura County Human Services Agency (HSA) filed a juvenile dependency petition alleging she "failed to protect" her young son A.F. "from the violent behavior" of Cody G. who is Mother's boyfriend.  It also filed juvenile dependency petitions involving her other three children.  In a report to the juvenile court, HSA said Cody G. is "an alleged father of" C.G., L.L., W.L.

In April 2011, Mother told the sheriff's department that she had been living with Cody G. who had physically assaulted her.  She said he also had physically assaulted her in four prior incidents.  In an incident report, a sheriff's deputy said Mother "did not want to report the incidents, and thought she could just 'sweep it under the rug.'"

The Ventura County Superior Court issued a restraining order prohibiting Cody G. to be within 100 yards of Mother and A.F.

In December 2011, Mother filed an application for a restraining order.  She said Cody G. had choked her and had "violently grab[bed]" A.F., her five-year-old son.  She said she feared for her life and her "children's" lives.  Mother was 16 weeks pregnant at the time of this incident.

Mother subsequently moved to Oregon.  She allowed Cody G. to move in with her and her children.

In March 2013, Cody G. punched A.F. multiple times "in the groin."  He also hit the child on the left side of his face and other parts of his body.  A police officer saw red marks on A.F.'s face.  There were also marks on his neck and shoulders.  His genital area was "black and blue from the beating."  The child was taken to the hospital.  Photographs of the child showed injuries to various parts of his body.  The Oregon Department of Human Services stated the child had "significant bruising to his penis, scrotum and legs."

Mother told a law enforcement officer that 10 days before the attack on A.F., Cody G. had "grabbed her by the arm, pushed her to the ground and held her

2

down." A.F. witnessed that attack. He said, "'[M]y mom was up against the wall so that she could protect the baby in her belly.'"

The Oregon District Attorney's Office filed criminal charges against Cody G. He was arrested for assault. An Oregon state court issued a "no contact" order prohibiting him from contacting A.F. Cody G. did not appear for a court hearing on his criminal case. He left the state of Oregon. Mother told a police officer that she "did not think [Cody G.] would follow any no contact order." She said that "[he] has a history of domestic violence."

Mother moved to an apartment in Arizona. A.F. told a social worker that Cody G. came to that apartment. He said Mother moved the family to a hotel and Cody G. "came to the hotel room when we were in Arizona."

Mother moved from Arizona to California. In 2014, Mother told an HSA social worker that Cody G. "comes over and sees the children." The social worker asked why she was "back together with Cody after what had occurred in Oregon." Mother said that "they are still trying to figure everything out." She told a social worker that A.F. "has been known to lie, he is only 7 years old." At this time Mother was living in the home of Cody G.'s mother. A.F. told the social worker that Cody G. "lives with them."

In August 2014, Mother contacted the Oregon District Attorney's Office. In an e-mail to a prosecutor she said, "In regards to the falsified charges, how is this supposed to stand in court? I will testify against DA and police officials in order to protect my own." She said, "I myself was never a victim to domestic violence by Cody."

The Oregon prosecutor told Mother that "there are warrants out for [Cody G.]," and the criminal cases against him cannot be resolved "[u]ntil [he] is apprehended on his warrants, or chooses to turn himself in . . . ."

HSA requested the juvenile court to bypass reunification services for Mother. (§ 361.5, subd. (b)(6).) It said the bypass provision applies to "the actual perpetrator" of "severe physical harm to the child or the child's siblings" and "to a parent who consents to the abuse by an act or omission of the parent." HSA said Mother knew the risk to her children because of Cody G.'s violence, but she "continued to allow him to

3

live with her and her children and even left her children alone with [him]." Cody G.'s "violent nature was not a thing of the past when [A.F.] was assaulted by him. Just ten days before [Mother] had also been abused by [Cody G.]. . . . She articulated to the court that she believed [Cody G.] was a risk to her own and her children's lives."

At the contested hearing, Mother was asked, "[D]o you deny that [Cody G.] physically abused [A.F.] while [Cody G.] was living with you in Oregon?" She answered, "I was not there. I could not say." She said she was not "concerned that [Cody G.] would hurt [the children]" and he never hit her. When asked why she obtained a restraining order against Cody G. in 2012, she said, "I don't remember exactly word for word what I reported, so I wouldn't be able to state that today."

Mother also testified she believed A.F.'s allegations about Cody G. and believed he "abused" her son. She was asked, "[S]o why did you let [Cody G.] have access to your son, to be around your son, after he beat your son?" She said to "allow for services . . . and allow for growth and ultimately reunification for healthy relationships . . . ."

The juvenile court found the four children to be "wards" of the juvenile court and that HSA "met its burdens for the jurisdictional stage of this case." It found the evidence showed Mother should be bypassed for reunification services. (§ 361.5, subd. (b)(6).) She did not "protect" her children. She "failed" in her duty to prevent the children from being in "the presence of influences that could hurt them mentally, psychologically, emotionally and physically." It said, "It appears to be clear that whether it's an emotional attachment, the financial dependence, the love you have for [Cody G.] . . . , you cannot keep yourself from him . . . and the Court has serious problems with that position which endangers your younger children as it already had to his detriment [A.F.]."

The juvenile court made negative credibility findings about Mother's testimony. It said, "[T]he Court could certainly observe mother's testimony and how hard it was for her to concede. The answers repeatedly were, 'I wasn't there. I didn't see it.'"

4

The court told Mother that she continues "to minimize what happened, to want to sweep it under the rug, to deny it and be in a state of denial for the danger of [her] children . . . ."

## DISCUSSION

### *Ineffective Assistance of Counsel*

Mother contends the orders of the juvenile court must be set aside because she received ineffective assistance of counsel. We disagree.

"Where the ineffective assistance concept is applied in dependency proceedings the appellant must" show 1) "'counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms,'" and 2) there is a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (*In re Emilye A.* (1992) 9 Cal.App.4th 1695, 1711.)

Mother contends she was denied effective assistance of counsel because her lawyer was not qualified to represent her because she "was not trained in the area of dependency law." She suggests the juvenile court should have appointed another attorney who was a specialist in that area of law. She states, "[T]he court made no inquiry of [counsel] regarding her competency to handle a juvenile dependency matter."

But Mother has not cited to evidence relating to her counsel's training. Moreover, representation by an attorney who is not a specialist does not mean she received ineffective assistance. Mother has not shown her counsel lacked the necessary qualifications to represent her. She does not dispute that she was represented by a licensed California attorney. "[T]he admission of an attorney to the bar establishes that the State deems him [or her] competent to undertake the practice of law before *all our courts, in all types of actions*." (*Smith v. Superior Court* (1968) 68 Cal.2d 547, 559, italics added.)

Mother contends the record shows that her counsel did not understand the relevant issues. We disagree. Her attorney objected to the HSA recommendation that she be bypassed for reunification services. She introduced testimony to show the HSA recommendation was wrong. She presented evidence to challenge statements made in

HSA reports and police reports. She asked Mother questions to present evidence about her participation in parenting classes and counseling. She introduced exhibits to support Mother's testimony. In closing argument, she cited case law and statutes. She gave a factual summary to support her claim that Mother should not be subject to the bypass provision.

Mother claims an example of her counsel's ineffective performance was her attempt to introduce several declarations that were not "relevant [to the] issues before the court." But the juvenile court admitted those declarations and overruled HSA's objections. Counsel introduced declarations showing "proof" of Mother's "completion of the parenting class" and "participation in counseling." That was for the purpose of corroborating Mother's testimony and supporting her credibility as a witness. The court said it would give the various declarations counsel presented "the weight . . . due on the probative issues to be proved today . . . ." It said the declarations involved "comments about character and parenting skills of the mother." Those were relevant issues.

Mother notes that during her direct examination her counsel said, "[C]an you guys give me a break here?" She made this remark in response to a series of sustained relevancy objections to a short line of questioning during Mother's direct testimony. Counsel had a right "to protest" what she considered to be "erroneous" rulings on objections. (*Smith v. Superior Court*, *supra*, 68 Cal.2d at p. 560). She had a right to object to an opponent's repeated objections which she felt were a tactic to interrupt her questioning of her witness. She should not, however, have used the phrase she selected to voice her objection. But this involved only a small part of the presentation of Mother's case. As HSA notes, it also made a number of objections that the court overruled. Mother has not shown how sustaining of a few relevancy objections to a short line of questioning negatively impacted the presentation of her case.

Mother contends her counsel did not know the procedure for making objections to hearsay contained in the HSA status reports. (§ 355.) She claims she therefore did not make objections that would have forced "HSA to produce the source of the hearsay statements" in those reports.

6

HSA claims Mother's argument is based on speculation. "Unless the record affirmatively establishes counsel had no rational tactical purpose for the challenged act or omission, we must affirm the judgment." (*In re Kristen B.* (2008) 163 Cal.App.4th 1535, 1541.)

Mother did not obtain a declaration from her trial counsel. Consequently, she has not produced a specific statement regarding counsel's trial strategy. Nor is there a showing in this record about whether counsel felt objections should have been made to any *specific* HSA reports.

Instead, Mother relies on a general statement her counsel made during closing argument. Her attorney asked the court to make findings based on Mother's testimony. She then made a negative remark about the HSA documents. She said, "And perhaps it's too late now to object to *all the stuff that gets attached to a social services report*, but--I don't know. In superior court, none of that gets allowed in without, you know, foundation, and I just think anything goes. *You can throw anything in*." (Italics added.) This statement is conclusory. It does not identify any specific HSA document that counsel felt was inappropriate. She was simply asking the court to give greater weight to Mother's testimony than to HSA's documents. Her remarks were made for Mother's benefit.

Mother's trial counsel did not make any objection to the HSA reports when they were initially introduced at the beginning of the hearing. Her statements appear to be commentary on what she considered to be relaxed evidentiary rules for admission of evidence in juvenile court. (§ 355.) Her statements do not show she lacked knowledge of the grounds for evidentiary objections.

HSA contends that even if Mother had shown ineffective assistance, the result would not change. We agree. Mother makes the conclusory assertion that had her counsel known about section 355 she would have used it "to prevent the admission of hearsay evidence."

But as HSA notes, Mother's petition does not "identify" 1) "any adverse evidence that would have been excluded," or 2) "any evidence helpful to her case that

7

would have been admitted if she were represented by" different counsel. A conclusory assertion that the result would have been different does not meet Mother's burden to make an adequate showing of the specific evidence that would lead to a "reasonable probability" of a different result. (*In re Emilye A.*, *supra*, 9 Cal.App.4th at p. 1711.)

Moreover, Mother's suggestion that a section 355 objection would have barred the admission of hearsay evidence in HSA reports is not accurate. The statute provides that if a party "raises a timely objection to the admission of *specific hearsay evidence* contained in a social study, the specific hearsay evidence shall *not be sufficient by itself* to support a jurisdictional finding . . . *unless the petitioner establishes one or more of the following exceptions . . . .*" (§ 355, subd (c)(1), italics added.) Mother's petition does not mention the specific hearsay she would have objected to, whether there was corroborating evidence to support it, or whether any of the statutory exceptions applied to allow admission of that evidence.

The limitation of the use of hearsay in HSA reports does not apply where: 1) the evidence falls within a recognized exception to the hearsay rule; 2) the declarant is "a minor under 12 years of age who is subject to the jurisdictional hearing"; 3) the declarant is a peace officer, social worker or health practitioner; or 4) where the hearsay declarant is "available for cross-examination." (§ 355, subd. (c)(1)(A), (B), (C) & (D).)

Consequently, A.F.'s statements were admissible because he was under 12 years of age and he is subject to the jurisdiction of the juvenile court. As HSA notes, the "attachments" to "the social worker reports," which were admitted into evidence, including "police reports, social worker reports from Oregon, medical reports, court orders or mother's own emails and writings," were also admissible under section 355. (§ 355, subd. (c)(1)(A), (B) & (C).) Mother has not named the individuals who were not available for cross-examination.

Moreover, Mother has not shown that the juvenile court's findings to bypass reunification services were based on anything involving the performance of her counsel. Those findings were based on the evidence of Mother's conduct, the court's concern about her lack of credibility and actions that subjected the children to a threat to their health and

safety. Mother's petition does not raise a specific challenge to the sufficiency of the evidence supporting the juvenile court's findings.

The petition is denied.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

Bruce A. Young, Judge

Superior Court County of Ventura

_____


Law Offices of Vincent W. Davis & Associates, Stephanie M. Davis for Petitioner.

No appearance for Respondent.

Leroy Smith, County Counsel, Jaclyn Smith, Assistant County Counsel, for Real Party in Interest.