Filed 8/16/24  In re S.S. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.S. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>L.G.,<br><br>Defendant and Appellant. | F086939<br><br>(Super. Ct. Nos. 03CEJ300051-5, 03CEJ300051-6, 03CEJ300051-7 & 03CEJ300051-8)<br><br>**OPINION** |

APPEAL from orders of the Superior Court of Fresno County.  Kim Nystrom-Geist, Judge.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

L.G., mother of minors, S.S., V.A., A.A., and D.A., appeals from orders made at a permanency planning hearing following the termination of minors' legal guardianship (Welf. & Inst. Code,[1] § 366.3), where the juvenile court ordered the children to remain in foster care with a future plan of "Another Planned Living Arrangement" for S.S. and placement with a fit and willing relative for V.A., A.A., and D.A.[2]

Mother first contends the court erred by finding notice for the hearing, at which mother did not personally appear, was proper, violating her constitutional due process rights. Though mother was represented by counsel at the hearing, and no objection was made, mother requests we exercise discretion to reach the notice issue despite the apparent forfeiture. In the alternative, mother contends her counsel's failure to object and/or request a continuance constituted ineffective assistance of counsel.

Mother also contends the court erred by finding that the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) did not apply to the proceedings because the department failed to make adequate inquiry into whether the children were potentially Indian children within the meaning of ICWA.

Finding no reversible error, we affirm the juvenile court's findings and orders.

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

[2]     Mother's notice of appeal also lists E.S., her older child, and indicates she is appealing from orders made at a hearing pertaining to E.S. conducted on September 6, 2023. E.S. was on a different procedural track than the other children, and no orders were made pertaining to her at the permanency planning hearing, which was conducted on August 30, 2023. On September 6, 2023, the jurisdiction/disposition hearing for E.S. was continued. As such, no appealable order was made in that case. (See *In re A.A.* (2023) 88 Cal.App.5th 393, 398 [" 'The first appealable order in a dependency case is the dispositional order.' "].) Because there has been no judgment/appealable order made in E.S.'s case, and no orders were made pertaining to her at the August 30, 2023 hearing, this court does not have jurisdiction over any claim relating to E.S. In their respondent's brief, the Fresno County Department of Social Services (department) represents that E.S. turned 18 years old in February 2024, and is now a non-minor dependent, and mother is no longer a party to her dependency matter.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying dependency matter was initiated in September 2015 due to mother's failure to supervise and protect the children, substance abuse issues, domestic violence, and mother's previous failure to reunify with the children's half siblings. Dependency jurisdiction was taken over the children, then ages eight, five, four, and two, and they were removed from mother's custody. Mother failed to reunify, and on February 1, 2017, the children were placed in a legal guardianship with their maternal great-aunt with dependency terminated.

In February 2023, mother filed a section 388 petition requesting the court re-open reunification services and assess mother for placement. The legal guardian subsequently filed a section 388 petition requesting the court to terminate the legal guardianship.

On May 31, 2023, the court granted the guardian's section 388 petition, terminated the guardianship, and reinstated dependency.

On June 26, 2023, the court conducted an evidentiary hearing on mother's section 388 petition. At the conclusion of the hearing, the court denied mother's petition, finding the proposed order was not in the children's best interest. The juvenile court set a permanency planning hearing for August 30, 2023. Mother appealed from the order denying her petition, and in *In re E.S. et al.* (Mar. 26, 2024, F086578) [nonpub. opn.], this court affirmed the juvenile court's order.[3] Remittitur was issued on May 28, 2024.

The department's permanency planning hearing report dated August 24, 2023, recommended then 16-year-old S.S. remain in foster care with a plan of "Another Planned Living Arrangement" and that then 13-year-old V.A., then 12-year-old A.A., and then nine-year-old D.A. remain in foster care with a plan of placement with a fit and

---

[3]     The facts of the underlying dependency proceedings through the June 26, 2023 hearing are set forth briefly here and in more detail in the opinion in case No. F086578.

willing relative.  S.S. was in one placement, and V.A., A.A., and D.A. were together in a separate placement.

It was reported that S.S.'s placement was appropriate and stable.  S.S.'s care provider was not interested in providing permanency, as the care provider knew it was not what S.S. wanted and was focused on helping S.S. graduate high school and transition into adulthood.  S.S. did not want to enter a plan of legal guardianship or adoption; she wished to remain in foster care and transition into continued foster care once she reached the age of majority.  S.S. reported she was not interested in visiting with mother.

V.A., A.A., and D.A. had moved placements at the beginning of August 2023 due to behavior issues, but their new placement was reported as being stable.  Their current care provider was unable to provide permanency at that time because the placement was too new, he was working on stabilizing the children's behaviors, and was aware of the children's wishes.  He was willing to keep the children and continue providing for them until they transitioned into adulthood.  The children did not want to enter a plan of legal guardianship or adoption, citing their negative experience in their legal guardianship with their maternal great-aunt.  They wanted to remain with their current care provider in foster care.

In July 2023, V.A., A.A., and D.A. all reported they were not interested in visiting with mother at that time.  V.A. reported he was not "really raised by her."  D.A. reported that when she visited with mother, mother made statements that were not true, which made D.A. uncomfortable.  In August 2023, when the children were asked about visiting with mother, V.A. reported he was still not interested in visiting with mother but may change his mind, A.A. reported he would visit if D.A. visited and the visit was supervised, and D.A. became very upset and stressed just by the question and was very worried about mother bringing her significant other to the visit.

V.A., A.A., and D.A. did end up visiting with mother in August 2023, and no concerns were noted during the visit; however, the care provider reported that following

the visit, A.A.'s and D.A.'s behaviors had escalated. Neither child was following directions. A.A. was talking back, and D.A. was throwing tantrums resulting in her throwing herself on the floor. In addition, A.A. and D.A. had become aggressive toward one another since the visit.

The report further indicated mother had not maintained contact with the department regarding the children. The social worker had sent mother a text message on August 14, 2023, indicating the department's recommendation was to be a permanent plan, not reunification at that time. On August 21, 2023, mother called the social worker to say she was concerned because the children did not have a television in their bedroom. On that day, the social worker explained the department's recommendation to mother; mother reported she agreed and did not want the children to enter a plan of guardianship or adoption. She wanted them to stay in foster care if they could not be returned to her. As of the writing of the report, mother had not provided the department "with information or documentation that would indicate that she has ameliorated the reasons of the children's removal."

On August 30, 2023, the day of the hearing, mother's counsel informed the court that mother was not present and submitted the matter with no objection, evidence, or argument. Counsel for the department and the children also submitted the matter with no further evidence or argument.

The court adopted the recommendations of the department.

## DISCUSSION

### I. Alleged Due Process Violation for Improper Notice of the Permanency Planning Hearing and Conducting the Hearing in Mother's Absence

#### A. *Relevant Facts*

Mother was personally present at the June 26, 2023 hearing when the August 30, 2023 permanency planning hearing was set.

The record contains two written notices sent via first class mail to mother: one addressed to an address on "Austin Way," and one addressed to a "confidential" address. The parties agree that the "Austin Way" address was not mother's current address and that the most current address for mother was on "Wrenwood" Avenue.

Mother was not personally present at the August 30, 2023 hearing, but as stated above, her attorney was present. The court found notice was proper with no objections from any party.

### B.    *Analysis*

Mother was entitled to notice via first class mail to her "usual place of residence or business." (§ 294, subd. (f)(6) [applies where … "the recommendation of the … social worker is … placement with a fit and willing relative, or another planned permanent living arrangement, as appropriate"].) She contends notice was deficient because the address to which the written notice was mailed was her previous "Austin Way" address and not her current "Wrenwood" address. Notably, mother does not acknowledge that two notices were sent to mother: the "Austin Way" notice and the "confidential" address notice.

Mother concedes her challenge to notice was arguably forfeited by her counsel's failure to object below but nonetheless requests that we exercise discretion to consider the merits of her claim. She further contends in the event we find forfeiture, that her counsel's failure to object and/or request a continuance to speak with her constituted ineffective assistance of counsel, since evidence on the record suggests he had not talked to her in advance of the hearing.[4]

---

[4]    The record on appeal indicates mother was present at a hearing conducted on September 6, 2023, pertaining to her older child, E.S. At that hearing, she indicated that at a hearing conducted on July 19, 2023, she fired her attorney, who was privately retained. The judge, who was not the judge who presided over the July 19 hearing, stated that the record did not reflect any substitution of attorney. (This court has also noted this event is not reflected in the reporter's transcript or clerk's transcript.) Counsel

The department's primary response is that notice was proper. While this appeal was pending, the department filed a motion to take additional evidence—e-mail correspondence between department employees indicating that the "confidential" address to which the second notice to mother was sent was the correct "Wrenwood" address. This court deferred ruling on the department's request pending consideration of the appeal on its merits and granted mother leave to file an informal response. Mother filed an opposition to the request on the ground that the evidence was not before the juvenile court when it found that notice was proper.

We conclude mother has not demonstrated reversible error without regard to the additional evidence the department has proffered. Given mother's objection and because, in our view, the proffered additional evidence is not necessary to the resolution of this appeal, we deny the department's motion.

We must note the mere existence of the department's motion illustrates that had mother objected to notice below, the department could have presented this evidence to the juvenile court, and mother could have made any appropriate objections. This would have been the more appropriate forum for litigation of the notice issue and would have potentially avoided unnecessary use of judicial resources. For this reason, we find mother's claim has been forfeited by failure to object below. (See *In re Wilford J.* (2005) 131 Cal.App.4th 742, 754 "[An appellate court ordinarily will not consider challenges based on procedural defects or erroneous rulings where an objection could have been but was not made in the trial court. [Citation.] … The purpose of the forfeiture rule is to encourage parties to bring errors to the attention of the juvenile court so that they may be corrected."].) However, given mother's ineffective assistance of counsel claim, our

acknowledged mother did fire him "in front of everyone," but he had not talked to her since then and continued to appear for mother because he thought she may have spoken out of emotion and did not intend to fire him. Mother, however, was adamant she did not want counsel to represent her, and the court relieved him and appointed mother new representation.

conclusions that she has simply not provided an adequate record demonstrating error nor that any error was prejudicial, we have decided not to reject mother's claim solely on the ground of forfeiture.

The burden is on mother as the appellant to overcome the presumption that the juvenile court's order is correct and demonstrate reversible error, including providing an adequate record. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) Here, though one notice sent to mother displayed the wrong address on "Austin Way," there was another notice sent to a confidential address. Mother has not pointed to any evidence that suggests this second notice was not sent to the correct "Wrenwood" address, an address that, as she points out, the record supports the department was aware of. Mother does not address whether the notice sent to her at a confidential address has any effect on the merits of her claim of error, nor does she provide any authority mandating that we presume it was not sent to her "usual place of residence." Because of the presumption of correctness, mother's claim is reliant on her ability to show error on the record. We find mother has not demonstrated error on the notice issue on this appellate record.

Even if we were to find mother has established error, or in the alternative, that her counsel provided ineffective assistance of counsel in connection with the notice issue or mother's absence from the hearing, mother has failed to establish she was prejudiced by her alleged improper notice nor by her absence at the permanency planning hearing. We find any error harmless beyond a reasonable doubt.

First, any error in notice was harmless because mother had actual notice of the hearing date, as she was present at the hearing where the permanency planning hearing was set. The record indicates that mother was aware the department was not recommending reunification and would instead be recommending continued foster care and further that mother had expressed agreement with the recommendation.

As to her absence at the hearing, mother contends she was deprived of her opportunity to prove that placement of the children with her and/or further reunification

services was the "best alternative" to continued foster care. (§ 366.3, subd. (b)(3).) The record indicates she would not be able to meet her burden for proving such. The issue of placement with mother and/or further reunification services had been litigated two months prior at the June 26, 2023 hearing, at which the juvenile court denied mother's request, finding it was not in the best interests of the children, a ruling this court reviewed for abuse of discretion and affirmed upon mother's appeal.[5] We reject mother's contention that there was a possibility mother could have met her burden at the permanency planning hearing despite having not succeeded in bringing her section 388 petition, due to the children's continued lack of permanency. It was not unforeseeable at the June 26 section 388 hearing that the children would not be in permanent placements by August 30, and the record demonstrates the juvenile court's finding that reunification was not in the best interests of the children was based more on mother's inability to provide a safe home for the children than the children's potential permanency.

By the time of the permanency planning hearing, only two months had passed since the section 388 hearing, and mother had not maintained communication with the department and had not provided further information regarding whether she had ameliorated the issues that necessitated the department's involvement or that she was capable of providing a safe home for the children. Mother had had extensive services over the years, including very recently, and was still involved in dependency proceedings pertaining to E.S. after E.S. was removed from her custody due to serious allegations.[6]

---

[5]     This court concluded the juvenile court's determination was supported by mother's poor reception to the extensive services she had received, the recent allegations of neglect and abuse of E.S., her continued domestic violence relationship with father, and statements made by E.S. and S.S. about mother. (*In re E.S. et al.* (*supra*, F086578).)

[6]     Allegations included that mother inflicted serious physical harm onto E.S., refused to provide or arrange for ongoing care of E.S. due to what she perceived as out-of-control behaviors such as using marijuana, sneaking in boys, and refusing to follow rules, and put E.S. at risk of suffering serious emotional damage due to her "history of denigration, threats and ongoing emotional tension" with E.S.

The children were all older and cognizant of their desires; S.S. refused to see mother, and V.A., A.A., and D.A. reluctantly visited with her in August, with A.A. and D.A. exhibiting bad behavior after the visit. None of the children were requesting to reunify with mother. The children adamantly expressed they wished to remain in foster care, as they had had a negative experience in their legal guardianship. The children's placements at the time of the hearing were stable, with the care providers indicating they wished to help the children transition to adulthood.

We also reject mother's suggestion that she was prejudiced because the court kept the visitation order of once per month the same. There is no evidence that either mother or the children were requesting more visitation in advance of the permanency planning hearing.

For these reasons, we find any error harmless beyond a reasonable doubt.[7]

## II. ICWA

### A. *Legal Background*

Under California's statutory scheme to comply with ICWA, the court and county child welfare department "have an affirmative and continuing duty to inquire whether a child," who is the subject of a juvenile dependency petition, "is or may be an Indian child."[8] (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9; Cal. Rules of Court, rule 5.481(a).) The agency's initial duty of inquiry includes "asking the child,

---

[7] Because we find any error harmless beyond a reasonable doubt, we reject mother's ineffective assistance of counsel claims. (*In re Kristen B.* (2008) 163 Cal.App.4th 1535, 1540 [to prevail on an ineffective assistance of counsel claim, a parent must demonstrate: "(1) counsel's representation fell below an objective standard of reasonableness; and (2) the deficiency resulted in demonstrable prejudice"].)

[8] An "Indian child" is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).)

When the court or social worker has "reason to believe"[9] (but not sufficient evidence to determine there is "reason to know"[10]) that an Indian child is involved in a proceeding, "further inquiry regarding the possible Indian status of the child" is required. (§ 224.2, subd. (e).) Section 224.2, subdivision (e)(2) enumerates three duties of further inquiry: (1) interviewing the parents, Indian custodian, and extended family members to gather biographical information regarding the child; (2) contacting the Bureau of Indian Affairs (BIA) and the State Department of Social Services for assistance in identifying tribes with whom the child may be affiliated; and (3) contacting tribes, or any other

---

[9]     "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated" in section 224.2, subdivision (d)(1)–(6). (§ 224.2, subd. (e)(1).)

[10]     These enumerated grounds for "reason to know" are: "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child[;] [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[;] [¶] [and/or] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d); see 25 C.F.R. § 23.107(c) (2024).)

person who may reasonably be expected to have information regarding the child's membership or eligibility for membership in a tribe.  (§ 224.2, subd. (e)(2)(A)–(C).)

If, after further inquiry is conducted, "the court, a social worker, or probation officer knows or has reason to know … that an Indian child is involved" in the dependency proceeding, formal notice shall be sent to the child's parents or legal guardian, Indian custodian, if any, and the child's tribe for any hearing that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement so the tribe may exercise its right to intervene.  (§ 224.3, subd. (a); see 25 U.S.C. § 1912(a).)

Before finding ICWA inapplicable, the juvenile court must make a finding that the agency conducted "proper and adequate further inquiry" and exercised "due diligence" in doing so, and that "there is no reason to know whether the child is an Indian child." (§ 224.2, subd. (i)(2).)

We review the juvenile court's finding that there is no reason to know whether a child is an Indian child for substantial evidence, and the court's finding that the agency has conducted a proper and adequate inquiry and due diligence for abuse of discretion. (*In re K.H.* (2022) 84 Cal.App.5th 566, 600–601; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005.)[11]

---

[11]    There is a split of authority among the Courts of Appeal regarding how to evaluate claims of ICWA inquiry error.  (See *K.H.*, *supra*, 84 Cal.App.5th at pp. 611–618 [summarizing the varied approaches].)  Our Supreme Court has granted review on the issue in *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted September 21, 2022, S275578.  We will apply the standards this court articulated in *K.H.* until the Supreme Court provides additional guidance in *In re Dezi C.*

## B.    *Relevant Factual/Procedural Background*[12]

At the outset of the underlying proceedings, in September 2015, mother reported on a "PARENTAL NOTIFICATION OF INDIAN STATUS" (ICWA-020) form, she was or might be a member of or eligible for membership in the "Kawali Ind[ia]n Apache" tribe. At the detention hearing, mother informed the court that the maternal grandmother and her "ancestors" were "Indian Qawwali" and "Apache."

The department prepared a "NOTICE OF CHILD CUSTODY PROCEEDING FOR INDIAN CHILD" (ICWA-030) form on behalf of the children. The form indicated that mother had claimed ancestry through the Kawali Indian Apache tribe, and that upon researching the tribe, the department learned it was a tribe located in India, and "[b]ecause the Kawali/Kawaii Indian Apache Tribe is not a Native American Indian Tribe, [the department] will only notice the Apache Tribe."

Among the children's biographical information, the ICWA-030 form included mother's name and birthdate, maternal grandmother's name and birthdate, and maternal grandfather's name and birthdate. It did not include any identifying information for maternal great-grandparents, indicating the information was not "available." The form was sent via certified mail to the BIA, the U.S. Department of the Interior, and eight Apache tribes.

The department received and filed responses from the majority of the tribes and the BIA indicating the children were not Indian children and that no further notice was required.

On January 6, 2016, the court found ICWA did not apply to the proceedings.

Thereafter, the department received and filed responses from an additional tribe indicating the children were not Indian children.

---

[12]    Mother makes no claim of ICWA error as to any presumed father; we omit facts pertaining to inquiry as to the children's paternal families.

In June 2023, both mother and maternal grandmother reported to the department they did not have any Native American ancestry.

At the detention hearing for mother's older child, E.S., on June 12, 2023, the juvenile court asked mother if she had any Native American heritage, if she had ever heard of anyone in her family who was born on tribal lands, and if she had ever heard of anyone in her family who "had a tribal name." Mother answered all questions in the negative. She also indicated to the court that there was no one in her family who would know more about her heritage than her. The court ordered mother to provide the social worker with names, residences, and any known identifying information of any maternal or paternal relatives. The court ordered the department to "make further inquiry of mother regarding any extended family members and to provide the Court with a description of the efforts to locate extended maternal and paternal family members."

In August 2023, mother again reported she had no Native American ancestry and that she had no relatives who could provide differing information. The maternal great-aunt (maternal grandmother's sister) reported she and the family had no Native American ancestry and had no living relatives who could provide additional information.

C.      *Analysis*

We conclude any implicit ICWA findings at the August 30 hearing were supported by the evidence and not an abuse of discretion. By that hearing, the department attempted to obtain relevant information from mother and available family members, all of whom denied Native American ancestry and expressed they could not identify any other relatives who could provide more information.

Mother's argument that the court erred is premised on her speculation that mother and her family members were basing their 2023 denial of Native American ancestry on the court's previous finding that ICWA did not apply. Mother contends the department could not rely on mother and her family members' representations because the department's previous 2015 inquiry was deficient because they did not obtain the

14.

maternal great-grandparents names before sending the ICWA-030 form to the relevant tribes. We decline to speculate on the reasons why mother and her family members indicated they had no Native American ancestry, and mother has provided no authority that persuades us the department had a duty to obtain such reasons.

As the juvenile court still retains dependency jurisdiction over the children, if mother or any maternal family members were to come forward with a claim of Native American ancestry or additional information that give rise to a reason to believe the children are Indian children within the meaning of ICWA, because the department has a continuing duty to inquire, they would be required to comply with the current versions of sections 224.2 and 224.3, notwithstanding the previous finding that ICWA did not apply. Based on the record before us, however, we find no error.

## DISPOSITION

The juvenile court's findings and orders are affirmed.


                                                       DE SANTOS, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


MEEHAN, J.


15.