Filed 3/18/26  In re S.R. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.R. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.D.,<br><br>Defendant and Appellant. | F090253<br><br>(Super. Ct. Nos. JD146769-00, JD146770-00)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Susan M. Gill, Judge.

Monica Vogelmann, under appointment by the Court of Appeal, A.D., in propria persona, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Detjen, Acting P. J., Meehan, J. and DeSantos, J.

In this juvenile dependency case, A.D. (mother) appeals from the juvenile court's dispositional order declaring her two minor children, A.R. and S.R. (collectively, the children), dependents of the court. After reviewing the record, mother's court-appointed appellate counsel informed this court she could find no arguable issues to raise on mother's behalf. This court granted mother leave to personally file a letter brief setting forth a good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844.) Mother filed a letter brief but has failed to make such a showing. Accordingly, we dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 23, 2025, the Kern County Department of Human Services (department) filed juvenile dependency petitions on behalf of then 10-year-old twins S.R. and A.R. alleging they came within the juvenile court's jurisdiction under Welfare and Institutions Code[1] section 300, subdivision (b)(1) (failure to protect), and additionally that A.R. came within the court's jurisdiction under section 300, subdivision (i) (cruelty). The children were detained from their great-grandmother and legal guardian L.L. (guardian) with whom they lived at the time of detention. It was alleged guardian failed to adequately supervise or protect the children from mother and mother's boyfriend C.R.

The supporting facts included that on December 25, 2024, an incident occurred during which mother and C.R. physically abused A.R., including throwing him on a bed; smothering him with a pillow; hitting him with a hairbrush; and attempting to force feces in his mouth, causing bruising on his face. Guardian and S.R. were present for the incident. It was further alleged that guardian was aware of the risk mother and C.R. posed because of an incident in July 2024, where C.R. hung A.R. upside down.

---

[1]      All further undesignated statutory references are to the Welfare and Institutions Code.

The detention hearing was conducted on January 30, 2025. Guardian's attorney entered denials and alerted the juvenile court and parties that guardian intended to file a request for a restraining order protecting guardian and the children from mother. The children's attorney indicated the children had expressed they wanted no contact with mother or C.R. Mother, through counsel, requested supervised visitation with the children, as it was an "integral part of… reunification."

The juvenile court ordered the children to continue to be detained from guardian. The court also ordered the children were to have "no contact, at this time, with … [mother] and [C.R.] as such contact would be detrimental to the children," noting that it was "not a final order, just the circumstances are pretty raw right now."

Guardian's request for a restraining order was filed on January 30, 2025. Hearing on the request was thereafter continued several times to eventually coincide with the disposition hearing.

Mother was cooperative with the department and began engaging in voluntary services, including parenting/neglect counseling and physical abuse as a perpetrator counseling. As a result of the December 25, 2024 incident, she and C.R. had been charged with felony child abuse and guardian had been charged with misdemeanor child abuse. A criminal protective order (CPO) was issued protecting A.R. from them.

Ahead of the jurisdiction/disposition hearing, the department recommended that the juvenile court sustain the dependency petition. As for disposition, the department recommended that the court declare the children dependents and order them removed from guardian's custody. The children's presumed father[2] was recommended to be ordered to participate in reunification services, but both mother and guardian were

---

[2]     The children's presumed father resided in Missouri and had not had recent contact with the children. He is not a party to this appeal and has not to our knowledge appealed separately. We have omitted facts pertaining to him, to the extent they are unrelated to the issues mother raises.

recommended to be denied services pursuant to section 361.5, subdivision (b)(6). It was further recommended that there continue to be no contact between the children and mother, as it was not in their best interest.

The jurisdiction hearing was conducted on May 22, 2025. Mother was present and represented by counsel. Mother's attorney "enter[ed] an objection and submitt[ed the matter] to the Court," stating he did not have "any further evidence or authority to present on her behalf." Guardian testified on her own behalf in support of her position that the juvenile court find the section 300, subdivision (i) allegation not true. Following the presentation of evidence, the parties argued, with mother's attorney stating simply he would "rest on [his] objection."

The juvenile court found the children were described by section 300, subdivision (b) and that A.R. was described by section 300, subdivision (i). The court continued the matter for disposition.

The department thereafter filed a petition to terminate the guardianship.

On July 21, 2025, the juvenile court conducted a hearing on (1) the proper disposition of the case, (2) the department's request for termination of guardianship, and (3) guardian's request for a restraining order against mother. Mother was present and represented by counsel.

The juvenile court first took up the matter of the termination of the guardianship, noting that it would consider testimony presented for all purposes. The children's attorney read a letter written by S.R. indicating that she wanted to return to guardian, as she is "the person [S.R.] call[s] mom." Mother's attorney stated that mother's position was that the guardianship should be terminated, and she would be offering no further evidence or argument on that issue. Guardian testified on her behalf in support of her objection to the guardianship being terminated and her request for reunification services. During guardian's testimony, the court allowed mother's attorney to question her on issues surrounding the restraining order. Guardian testified mother had not attempted to

4.

contact her since January 2025, but she was afraid of mother due to incidents in the past. After hearing argument on the termination issue, the court denied the department's request to terminate the guardianship.

The juvenile court next took up the issues of disposition and the restraining order. Mother testified on her behalf. She presented her account of the events that transpired on December 25, 2024. According to mother, A.R. got upset that day and was biting and hitting guardian and mother and using profanity. C.R. contained him by holding him down on the bed, and mother pulled down his pants and "whopped him three times" with the brush on his buttocks, and "there was poop," so C.R. walked away to wash his hands. Mother also discussed her progress in her voluntary case plan. She completed a 12-week parenting and neglect class and was participating in a six-month child abuse as a perpetrator class. She was also participating in therapy and was addressing childhood trauma and breaking negative patterns in her parenting. Looking back at the December 25, 2024 incident, applying what she has learned from services, she would have walked away from the situation allowing everyone to take a "breather." She stated she was still in a relationship with C.R. because the allegations against him were false and C.R. did not do anything to A.R.

The juvenile court then heard argument from the parties. Guardian and mother each requested reunification services. Counsel for the children expressed support for the restraining order and the bypass recommendation for mother, stating the children have indicated "without hesitation" they do not want to have contact with mother. He argued guardian, however, should be ordered to receive reunification services.

In ruling, the juvenile court noted it did not find mother to be "particularly credible." The court observed that mother appeared to love the children but was not credible with regard to what happened on December 25, 2024. The court added it was concerned about mother's continued relationship with C.R. as he was "horribly violent" with A.R.

The juvenile court granted the restraining order to expire in three years and ordered mother to have no contact with guardian or the children except for court-ordered visitation.

As for disposition, the juvenile court adjudged the children dependents and removed them from guardian's custody. Father and guardian were ordered to participate in family reunification services. The court ordered mother not to receive reunification services pursuant to section 361.5, subdivision (b)(6), finding mother had caused severe physical harm to A.R., that it would not benefit the children to pursue reunification services with her, and reunification for mother was not in the children's best interests. The court continued the order of no visitation with mother, finding any contact with her or C.R. would be detrimental to the children. The court set the matter for a six-month review hearing.

## DISCUSSION

An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant's burden to raise claims of reversible error or other defect and present argument and authority on each point made. If the appellant fails to do so, the appeal may be dismissed. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Mother's letter brief does not set forth a good cause showing arguable issues of reversible error exist. She contends that her attorney provided ineffective assistance of counsel by failing to contest the jurisdictional allegations and by failing to present evidence she provided to him such as screen shots of text messages she asserts proves the guardian invited her over after filing the restraining order request, a letter describing why she wanted to reunify with the children, and photographs of her and the children together. She cites conversations that occurred between herself and her attorney, indicating he adopted strategies of which she did not approve or agree with and that he was misleading about what he intended to do.

6.

To prevail on an ineffective assistance of counsel claim, a parent must demonstrate: "(1) counsel's representation fell below an objective standard of reasonableness; and (2) the deficiency resulted in demonstrable prejudice." (*In re Kristen B.* (2008) 163 Cal.App.4th 1535, 1540.) Generally, the proper way to raise a claim of ineffective assistance of counsel is by writ of habeas corpus. When it is raised in a direct appeal, it may be reviewed only "where 'there simply could be no satisfactory explanation' for trial counsel's action or inaction." (*In re Dennis H.* (2001) 88 Cal.App.4th 94, 98, fn. 1.) "The establishment of ineffective assistance of counsel most commonly requires a presentation which goes beyond the record of the trial…. Action taken or not taken by counsel at a trial is typically motivated by considerations not reflected in the record…. Evidence of the reasons for counsel's tactics, and evidence of the standard of legal practice in the community as to a specific tactic, can be presented by declarations or other evidence filed with the [petition for writ of habeas corpus]." (*In re Arturo A.* (1992) 8 Cal.App.4th 229, 243.)

Here, mother has not shown she can make an arguable claim of ineffective assistance of counsel, as she has not attempted to show that, on the record on appeal before us, there was no satisfactory explanation for her attorney's actions or inaction of which she complains. Rather, her claims rely on matters outside the record, including conversations between herself and her attorney, and evidence that was not before the juvenile court, and thus are not appropriate for our review on direct appeal.

Because mother has not shown good cause that an arguable issue of reversible error exists, we dismiss the appeal.

## DISPOSITION

The appeal is dismissed.